TEITELBAUM LAW GROUP, LLC
*Counsel for the Debtors and*
*Debtors in Possession*
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670
Fax: (914) 437-7672
Email: jteiltelbaum@tblawllp.com
Jay Teitelbaum, Esq.
David Brooks, Esq.

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

In re:

|  |  |
|---|---|
| | Chapter 11 |
| E & J MACON LLC, *et al.*,[1] | Case No. 1:18-40321-nhl |
| | *Jointly Administered* |
| Debtors. | |

## THIRD AMENDED DISCLOSURE STATEMENT FOR DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

## I.    INTRODUCTION

E & J Macon LLC, 1596 Pacific Realty LLC, 1049 Bergen Realty LLC and 401 Macon

Realty LLC, (each a "**Debtor**" and collectively the "**Debtors**") submit this Third Amended

Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization (this "**Third**

**Amended Disclosure Statement**") pursuant to Section 1125(b) of Title 11, United States Code,

11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**") and Rule 3017 of the Federal Rules of

---

1 Pursuant to order entered January 31, 2018 (ECF Docket No. 15), the Debtors jointly administered under this caption, along with E&J Macon LLC ("**E&J Macon**"), are 1596 Pacific Realty LLC ("**Pacific Realty**"), Case No. 18-40410-nhl, 1049 Bergen Realty LLC ("**Bergen Realty**"), Case No. 18-40412-nhl and 401 Macon Realty LLC ("**Macon Realty**"), Case No. 18-40409-nhl.

Bankruptcy Procedure (the "**Bankruptcy Rules**"), in connection with Debtors' Joint Third Amended Chapter 11 Plan of Reorganization dated February 3, 2019 (the "**Third Amended Plan**") to all known holders of Claims against or Interests in the Debtors in order to adequately disclose information deemed to be material, important and necessary to make a reasonably informed judgment about the Third Amended Plan, including who is entitled to vote to accept or reject the Third Amended Plan.  A full copy of the Third Amended Plan is attached to this Amended Disclosure Statement as **Exhibit "A"**. *Your rights may be affected. You should read the Third Amended Plan and this Third Amended Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.*

A Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization (the "**Original Disclosure Statement**") was initially filed on December 24, 2018 as ECF Docket No. 129. A proposed Joint Chapter 11 Plan was also filed on December 24, 2018 as ECF Docket No. 130. Notice of the hearing on the Original Disclosure Statement was filed on December 24, 2018 as ECF Docket No. 131 and proof of service of the Original Disclosure Statement and Notice of Hearing was filed as ECF Docket No. 132.  The Debtors received two responses to the Original Disclosure Statement: (i) an email response dated January 16, 2019 from the Office of the United States Trustee identifying updated fees which would be payable to the Office of the United States Trustee; and (ii) a limited objection by the City of New York (ECF Docket No. 135). On January 22, 2019, Debtors filed a First Amended Disclosure Statement and a First Amended Joint Chapter 11 Plan of Reorganization as ECF Docket No. 137 and 138 (the "**First Amended Disclosure Statement**" and the "**First Amended Plan**", respectively) to address these responses and to provide more current information on the Chapter 11 Cases. A redline identifying the changes between the Original Disclosure Statement and the First Amended Disclosure Statement

2

was also filed with the Court as ECF Docket No. 137-10. Notice of the filing of the amendments was filed as ECF Docket No. 139.

At the January 24, 2019 hearing on the approval of the First Amended Disclosure Statement, the Bankruptcy Court conditionally approved the First Amended Disclosure Statement pursuant to Bankruptcy Code §1125(f) and conditionally set February 28, 2019 at 11:30 a.m. as the date for the confirmation hearing in these cases; however, as the First Amended Disclosure Statement did not address the Bonifacio Claim (as defined *infra*), filed on January 24, 2019 as an administrative claim against Debtor 401 Macon Realty LLC in the amount of $20 million, the Court "so ordered" the record to permit the Debtors to serve by January 28, 2019 a notice of presentment of proposed order approving the First Amended Disclosure Statement as further amended to address the Bonifacio Claim, with presentment on February 7, 2019 at 11:30 a.m. and with objections due by February 5, 2019.

On January 25, 2019, the Debtors filed the Second Amended Disclosure Statement (the "**Second Amended Disclosure Statement**") and an accompanying Second Amended Plan (the "**Second Amended Plan**") on the Court's electronic docket as ECF Docket Nos. 147-150. The Debtors' also filed a redline comparing the Second Amended Disclosure Statement and Second Amended Plan to the First Amended Disclosure Statement and Amended Plan. The only substantive change was the addition of a section concerning disputed administrative claims filed subsequent to the First Amended Disclosure Statement, including the Bonifacio Claim, and their proposed treatment. Other revisions were ministerial, descriptive and conforming.

Subsequent to the filing of the Second Amended Plan and Second Amended Disclosure Statement, counsel for the Debtors and Bonifacio reached an agreement in principal as to the resolution of the Bonifacio Claim. On February 4, 2019, the Debtors filed the Third Amended

Disclosure Statement and an accompanying Third Amended Plan on the Court's electronic docket as ECF Docket Nos 155-156. The only substantive revision to the prior iterations of the disclosure statement and plan was the insertion of a section setting forth the terms of the Bonaficio Claim settlement (see redlines comparing the Third Amended Disclosure Statement and Third Amended Plan to the Second Amended Disclosure Statement and Second Amended Plan filed as ECF Docket Nos 155-11 and 156-4). In summary, the Bonifacio Claim will be allowed as an unliquidated claim and Bonifacio shall have recourse only as against any available insurance proceeds. The automatic stay will be modified to permit Bonifacio to pursue his state law claims. There shall be no reserve for the Bonifacio Claim, and no distribution of any property of the estate on account of the Bonifacio Claim. The Debtors shall be discharged of any liability on account of the Bonifacio Claim. These settlement terms are reflected in a Stipulation and Order submitted to the Court on February 8, 2019 as ECF Docker No. 164.

The Bankruptcy Court approved the Third Amended Disclosure Statement, as filed, under section 1125(f)(3) of the Bankruptcy Code on the record of hearings held on January 24, 2019 and February 7, 2019 and by Order dated February 8, 2019 (ECF Docket No. 166) and has scheduled a hearing to consider confirmation of the Third Amended Plan on shortened notice for February 28, 2019 at 11:30 a.m. (the "**Confirmation Hearing**")."

This Third Amended Disclosure Statement is the post-approval, final version of the as-filed Third Amended Disclosure Statement. It incorporates limited revisions made in accordance with section 1127(a) of the Bankruptcy Code, specifically, amendments to fill in blanks, update the status of certain pending motions, and otherwise finalize the document.

Under section 1126(b) of the Bankruptcy Code, only Classes of Allowed Claims and Interests that are "impaired" under the Third Amended Plan, as defined by section 1124 of the

Bankruptcy Code, are entitled to vote on the Third Amended Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered under the Third Amended Plan.

**Under the Third Amended Plan, all Allowed Claims will be paid in full within 10 business days after the Effective Date of the Third Amended Plan and holders of Interests in the Debtors shall retain such interests. Accordingly, no claims or interests or classes of claims or interests are impaired under the Third Amended Plan and creditors and interest holders will not be solicited to vote to accept or reject the Third Amended Plan. All creditors and interest holders will be deemed to have accepted the Third Amended Plan.**

If the Third Amended Plan proposed to impair creditors and interest holders, to be accepted by an impaired Class, the Third Amended Plan must be accepted by (i) more than one half in number and two-thirds in dollar amount of the Allowed Claims actually voting in such Class; and (ii) at least two- thirds in dollar amount of the Allowed Interests actually voting in such Class.

### A. Purpose of This Document

**This Third Amended Disclosure Statement describes:**

- The Debtors and significant events during the bankruptcy case;
- How the Third Amended Plan proposes to treat claims and interests of the type you hold (*i.e.*, what you will receive on your claim or interest if the Third Amended Plan is confirmed and your claim or interest is "allowed" within the meaning of the Third Amended Plan);
- Who can vote on or object to the Third Amended Plan;
- What factors the Bankruptcy Court (the "**Court**") will consider when deciding whether to confirm the Third Amended Plan;
- Why the Debtors believe the Third Amended Plan is feasible, and how the treatment of your claim or interest under the Third Amended Plan compares to what you would receive on your claim or interest in liquidation; and
- The effect of confirmation of the Third Amended Plan.

Be sure to read the Third Amended Plan as well as this Third Amended Disclosure Statement. This Third Amended Disclosure Statement describes the Third Amended Plan, but it is the Third Amended Plan itself that will, if confirmed, establish your rights.

**B.  Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing**

This section describes the procedures pursuant to which the Third Amended Plan will or will not be confirmed.

*1.  Time and Place of the Hearing to Confirm the Third Amended Plan*

The hearing at which the Court will determine whether to confirm the Third Amended Plan will take place on **February 28, 2019 at 11:30 a.m.** before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, at the United States Bankruptcy Court, Courtroom 1595 in the Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, New York 11201.

*2.  Deadline For Voting to Accept or Reject the Third Amended Plan*

No Claims or Interests are Impaired under the Third Amended Plan.  Pursuant to Bankruptcy Code § 1126(f), all claims and interests are deemed to have conclusively accepted the Third Amended Plan. Therefore, no holders of Claims or Interests will be solicited to vote on the Third Amended Plan.

*3.  Deadline For Objecting to the Confirmation of the Third Amended Plan*

Objections to the confirmation of the Third Amended Plan must be filed with the Court and served upon Teitelbaum Law Group, LLC, Counsel for the Debtors, 1 Barker Avenue, 3rd Floor, White Plains, New York 10601, Attn: Jay Teitelbaum, Esq. jteitelbaum@tblawllp.com by **February 25, 2019 such as to be received by 5 p.m. on such date.**

*4. Identity of Person to Contact for More Information*

If you require additional information about the Third Amended Plan, you should contact Teitelbaum Law Group, LLC, Counsel for the Debtors, 1 Barker Avenue, 3rd Floor, White Plains, New York 10601, Attn: Jay Teitelbaum, Esq., (914) 437-7670 or jteitelbaum@tblawllp.com.

***C.    The Court has approved this Third Amended Disclosure Statement as containing adequate information to enable parties affected by the Third Amended Plan to make an informed judgment about its terms. The Court has not yet determined whether the Third Amended Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Third Amended Disclosure Statement does not constitute an endorsement of the Third Amended Plan by the Court, or a recommendation that it be accepted.***

## II.    <u>BACKGROUND</u>

### A.  Description of the Debtors and Ownership of the Debtors

Three of the four debtors is a single asset real estate company, as such term is defined and used in Bankruptcy Code §§101(51)(B) and 362(d)(3). The fourth Debtor is a single member LLC 100% owned by Ervin Johnson, Jr. ("**<u>Johnson</u>**") and which, as of the filing date, did not own any assets or have any operations. The three operating Debtors are New York limited liability companies engaged in the business of owning and operating multifamily/mixed use properties in the City of New York.

The properties at issue in these cases are as follows:

- an 8-unit building located at 1596 Pacific Street, Brooklyn, NY ("**<u>Pacific Street</u>**"), owned by Debtor 1596 Pacific Realty, LLC;

- a 4-unit building located at 1049 Bergen Street, Brooklyn, NY ("**Bergen Street**"), owned by Debtor 1049 Bergen Realty, LLC; and

- a 16-unit building at 401 Macon Street, Brooklyn, NY ("**Macon Street**" and together with Pacific Street and Bergen Street, the "**Premises**"), owned by Debtor 401 Macon Realty, LLC.

The ownership and management of the Debtors as of the Petition Date is as follows:

**E&J Macon LLC**:

- Ervin Johnson, Jr. 100% owner/ manager

**401 Macon Realty LLC**:

- Manager Mark J. Nussbaum
- 401 Macon Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 401 Macon Johnson LLC
- 401 Macon Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 401 Macon Holdings LLC

**1049 Bergen Realty LLC**:
- Manager Mark J. Nussbaum
- 1049 Bergen Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1049 Bergen Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1049 Bergen Holdings LLC

**1596 Pacific Realty LLC**:
- Manager Mark J. Nussbaum
- 1596 Pacific Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1596 Pacific Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1596 Pacific Holdings LLC

### B. Events Leading to Bankruptcy

The Premises were originally owned by, and titled to, Johnson. Johnson is a 71 year old man, retired from 13 years of service at the United States Postal Service and 20 years with the New York City Department of Sanitation. From his savings, Johnson purchased the Premises between 1987 and 1998.

Johnson is not a sophisticated business person or rental property operator, and over the years under his ownership the Premises fell into disrepair. As a result, the City of New York issued numerous violations against the Premises. Johnson lacked the resources to cure these violations or pay the attendant fines and penalties. As the Premises fell into further disrepair, fines mounted and tenants withheld rent- - exacerbating the financial distress in operating the Premises.

In the spring/summer of 2015, Johnson met John Clarke ("**Clarke**"), who purported to be a deacon at a local church. Clarke held himself out as someone Johnson could trust to manage the Premises.  Clarke claimed to have the experience and contacts necessary to navigate New York City's myriad departments and agencies with jurisdiction over housing. Clarke further indicated he could arrange financing to fund necessary repairs to and renovation of the Premises. Clarke convinced Johnson to execute a management agreement with Seaview Management Associates Corp. ("**Seaview**") (a company Clarke owned and operated), which granted Clarke broad powers over the management of the Premises and the associated rental income.

Clarke arranged for a $3,650,000 loan to be made to Johnson by Hirshmark Capital (the "**Macon Loan**") through Hirshmark's affiliate, Macon Funding Associates ("**Macon Funding**"), and secured by a first mortgage on the Premises (the "**Macon Mortgage**"). As a condition to extending the Macon Loan, Macon Funding required, among other things, that the Premises be

transferred from Johnson's personal name into a real estate holding company. Debtor, E&J Macon was formed for this purpose in September 2016 substantially contemporaneously with the closing of the Macon Funding Loan. At all times, Johnson has been the sole member of E&J Macon.

The Macon Loan closed on or about September 29, 2016. At closing, Johnson executed the Macon Mortgage and other loan documents, as well as deeds transferring title to each of the Premises into E&J Macon. The bulk of the proceeds of the Macon Loan were used to pay off delinquent taxes, tax liens, municipal fines, and mortgages affecting the Premises.

The remaining proceeds of the Macon Loan were intended to be used to operate, repair and renovate the Premises, but, upon information and belief, were diverted by Clarke for his own benefit. Thereafter, Clarke exploited his position of trust with Johnson and his signatory rights on the E&J Macon operating account, to divert the rental income from the Premises. Over the course of about a year under Clarke's management, the Premises fell into further disrepair, additional violations, liens, and fines were assessed against the Premises, and the Macon Loan fell into default.

In early 2017, Johnson became aware of Clarke's theft and mismanagement and learned that the Premises were at risk of foreclosure. Johnson terminated the Seaview Management agreement and severed his relationship with Clarke. Johnson thereafter retained USA Quick Solutions Corp. to replace Seaview as property manager and began looking to refinance the Macon Loan. This search led Johnson to Mark J. Nussbaum ("**Nussbaum**"), who agreed to provide interim funding for the renovation and maintenance of the Premises, in the form of a second mortgage on the Premises, and to assist with procuring a permanent loan to refinance the Macon Loan and such second mortgage.

10

While conducting due diligence, Nussbaum learned that Clarke had recorded a fraudulent operating agreement against the Premises within which he asserted a 60% ownership interest in E&J Macon and, by extension, the Premises.

Nussbaum and Johnson were concerned that Clarke had recorded the fraudulent operating agreement in the land records for the purpose of establishing his authority to encumber or sell the Premises as agent of E&J Macon.  To head off any such encumbrance or sale, Nussbaum and Johnson formed three new holding companies (Pacific Realty, Bergen Realty and Macon Realty) and transferred the Premises from E&J Macon to each of these Debtors by deeds dated June 26, 2017 and recorded July 24, 2017 in the Office of the City Register of the City of New York.

Johnson then commenced an action on or about July 5, 2017 against Clarke and Twuana Janvier, seeking damages arising from or relating to the Fraudulent Operating Agreement. This action is pending in the Supreme Court in Brooklyn as *Ervin Johnson v. E&J Macon LLC, John Clarke and Twuana N. Janvier,* 513064/2017, Kings County Supreme Court (the "**Fraud Action**"). As a result of the order and judgment entered in this case regarding Clarke (discussed *infra)*, Johnson, by his separate counsel, is seeking dismissal of the Fraud Acton.

The Fraudulent Operating Agreement created a cloud on Johnson's ownership of E&J Macon and the Debtors' right, title and interest in the Premises.  Indeed, the recording of the Fraudulent Operating Agreement and the defaults under the Macon Loan were the precipitating factor in filing these Bankruptcy Cases. With the cloud on title created by Clarke, the Debtors could not obtain financing to repay the Macon Loan, repair and maintain the Premises and operate their businesses.

### C. Significant Events During the Bankruptcy Case

#### 1. Commencement and Administration of the Cases

On January 19, 2018 (the "**First Petition Date**"), E&J Macon filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 25, 2018 (the "**Second Petition Date**" and together with the First Petition Date, the "**Petition Date**"), each of Pacific Realty, Bergen Realty, and Macon Realty filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

By order entered January 31, 2018 and filed on February 1, 2018 as ECF Doc. No. 15, the Court approved the Debtors' request for joint administration of their Chapter 11 Cases. The cases were assigned to the Hon. Nancy Hershey Lord, United States Bankruptcy Judge, for administration under the Bankruptcy Code.

The Debtors have continued in possession of their property and the management of their business affairs as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been heretofore appointed in this proceeding. No official committee of unsecured creditors has been formed.

#### 2. Employment of the Debtors' Professionals and Fee Applications

At the outset of this case, the Debtors retained Teitelbaum Law Group, LLC ("**TLG**") as their bankruptcy counsel in these bankruptcy cases. The retention of TLG was approved by an Order of the Bankruptcy Court dated February 24, 2018, *nunc pro tunc* as of the Petition Date (ECF No. 28). Separately, by order of the Bankruptcy Court dated February 24, 2018, (ECF No. 29), Colasanti & Iurato, LLP ("**C&I**") was retained as the Debtors' accountants.

As of the filing of this Third Amended Disclosure Statement, professionals have filed two interim fee applications as follows:

- **Teitelbaum Law Group**:

  o First Interim Fee Application:

| | |
|---|---|
| Total Fees Requested: | $    84,246.00 |
| Total Fees Allowed (80%) | $    67,396.80 |
| Total Holdback (20%) | $    16,849.20 |
| Total Expenses Requested: | $     6,178.27 |
| Total Expenses Allowed: | $     6,178.27 |
| Total Received By Applicant | |
| Fees | $    13,821.73 |
| Expenses | $     6,178.27 |
| Total | $    20,000.00 |
| Remaining Unpaid Allowed Fees | $    53,575.07 |
| Total Retainer | $     5,288.50 |

  o Second Interim Fee Application

| | |
|---|---|
| Total Fees Requested | $ 58,869.00 |
| Total Fees Allowed (80%) of Fees | $47,095.20 |
| Total Holdback (20%) | $11,773.80 |
| Total Expenses Requested | $2,055.09 |
| Total Expenses Allowed | $2,055.09 |

Estimated fees and Expenses for the period October 1, 2018 through the Effective Date is $85,000.

- Colasanti & Iurato

  o First Interim Application

| | |
|---|---|
| Total Fees Requested: | $    12,947.00 |
| Total Fees Allowed | $    10,357.60 |
| Total Holdback | $     2,589.40 |
| Total Expenses Requested: | $         0.00 |
| Total Expenses Allowed | $         0.00 |
| Total Payments Received | $    10,357.60[2] |
| Retainer | $20,000.00 |
| Fees Paid from Retainer | $ 10,357.60 |
- | Retainer Balance | $ 9,642.40 |

---

[2] Applicant has not sought monthly interim payments pursuant to Administrative Order No. 583. These fees were paid from Applicants' pre-petition retainer

13

o   Second Interim Application

| | |
|---|---|
| Total Fees Requested | $ 11,174.00 |
| Total Fees Allowed (80%) | $  8,939.20 |
| Total Holdback (20%) | $  2,234.80 |

Estimated fees and Expenses for the period October 1, 2018 through the Effective Date is $25,000.

### 3.   Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs

On March 6, 2018, the Debtors filed Schedules of Assets and Liabilities, together with its Statement of Financial Affairs (collectively, the "**Schedules**", ECF Nos. 33-35). The Debtors' Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov.

### 4.   Claims Bar Dates

On March 2, 2018, the Court entered an order (the "**Bar Order**") establishing the deadline for filing proofs of claim and proofs of interest in the Debtors' cases (ECF No. 32), setting April 30, 2018 as the general Bar Date (and July 24, 2018 as the bar date for governmental units) in each case. On March 8, 2018, a notice of entry of the order was mailed to all creditors listed on the Debtors' creditor matrixes filed with the Bankruptcy Court (See ECF Nos. 32-1 and 38).

On December 11, 2018, the Debtors filed an application to establish January 24, 2019 as the administrative claims bar date for all administrative claims other than for professionals retained by the Debtors, the DIP Lender and the U.S. Trustee (ECF Docket No. 121). Pursuant to order entered January 3, 2019 as ECF Docket No. 133, the Court approved January 24, 2019 as the Administrative Claim Bar Date other than for certain tax claims asserted by the New York City Department of Finance. As set forth in the Affidavit of Service filed on January 3, 2019 as ECF Docket No. 134, the Debtors timely served the Administrative Bard Date Order and accompanying Notice on all parties in interest.

*5.   341 Meeting and Case Status Conferences*

On March 9, 2018, the Debtors attended their Initial Debtor Interview and Section 341(a) Meeting of Creditors. The Debtors also appeared at the initial case conference in this Bankruptcy proceeding before the Hon. Nancy Hershey Lord on February 15, 2018, and Debtors' counsel has appeared at all hearings and case conferences as scheduled by the Bankruptcy Court.

*6.   Post-Petition DIP Lending*

The Debtors had insufficient cash to make adequate protection payments to Macon Funding and to operate, repair, and renovate the Premises. Nussbaum (the "**DIP Lender**") agreed to loan the Debtors up to $300,000 (the "**Original DIP Loan**") pursuant to § 364(b) of the Bankruptcy Code. An order approving the Original DIP Loan on an interim basis was entered by the Bankruptcy Court on March 26, 2018 (ECF No. 43), and the Original DIP Loan was approved on a final basis pursuant to order of the Bankruptcy Court entered April 22, 2018 (ECF No. 59). The Debtors subsequently determined that the proceeds of the Original DIP Loan were insufficient to fund their post-petition expenses. On June 26, 2018, the Debtors filed a motion seeking approval to supplement the Original DIP Loan with an additional advance or advances to be made by Nussbaum totaling up to $275,000.00 (the "**Additional DIP Loan Advance**"). The Bankruptcy Court approved this motion by order dated July 26, 2018 (ECF No. 109). The Original DIP Loan, as increased by the Additional DIP Loan Advance, has been fully drawn by the Debtors. The original DIP Loan agreement provided that the loan matured upon, among other things, the earliest to occur of the effective date of a Chapter 11 plan and December 31, 2018. The DIP Lender subsequently agreed to modify the DIP Loan Agreement to extend the Maturity Date from December 31, 2018 to June 1, 2019, and such amendment was approved by order of the Court dated January 21, 2019 (ECF No. 136).  This amendment prevented the Debtors from

15

incurring default interest from December 31, 2018 through the Effective Date. On January 25, 2019, the Debtors filed a motion seeking approval to further amend the DIP Loan Agreement to allow Nussbaum to make an additional advance (or advances) of up to $50,000.00 to fund the expenses associated with the proposed exit facility described below (the "**Final DIP Loan Advance**"), which the Bankruptcy Court approved by Order entered February 8, 2019 as ECF Docket No. 166. The Original DIP Loan, as increased by the Additional DIP Loan Advance and the Final DIP Loan Advance, is hereinafter referred to collectively as the "**DIP Loan**."

The DIP Lender was granted an administrative priority claim and a lien upon all assets of the Debtors, junior to valid and duly perfected liens existing (i) as of the Petition Date, with respect to the Original DIP Loan, (ii) as of July 26, 2018, with respect to the Additional DIP Loan Advance, and (iii) as of February 7, 2019, with respect to the Final DIP Loan Advance.

7. *Clarke Adversary Proceeding:*

The Debtors have expunged the interests of Clarke in the Debtors and the Premises. The Debtors (i) obtained 2004 Orders to take discovery of Clarke and various other parties (ECF Docket Nos. 58; (ii) objected to the claim and interest of Clarke (ECF Docket No. 64); and commenced an adversary proceeding captioned *E& J Macon LLC, 1596 Pacific Realty LLC, 1049 Bergen Realty LLC and 401 Macon Realty LLC v. John Clarke,* Adv. Proc. 18-01068. On August 17, 2018, Judgment was entered in favor of the Debtors expunging all interest of Clarke in the Debtors and the Premises. This Judgment was recorded with the City Register of the City of New York on August 29, 2018 (Control No. 2018000290499). The bankruptcy process saved the Debtors years of potential litigation in the state courts, efficiently removing the most significant obstacle to the reorganization.

8.  *Settlement of MPW Claim Action*:

Pursuant to an order dated May 30, 2018 (ECF Docket No. 77), the Debtors and MPW Funding settled a dispute regarding an alleged contract executed by the Debtors and MPW wherein, among other things, the Debtors were granted a right to re-purchase property commonly known as 346 East 9th St., Brooklyn, N.Y. The parties disputed whether the original sale to MPW was valid and whether the Debtors' right to purchase the property had expired.  The dispute was also the subject of a state court action. Pursuant to the settlement the Debtors were paid $40,000 to release their claims under the contract to re-purchase the property and dismiss the action. The settlement saved the estates months of costly and uncertain litigation.

9.  *Claim Objections:*

The Debtors objected to a handful of claims, including claims filed by (i) the New York City Department of Finance, for general corporate taxes and unincorporated business taxes, and (ii) Macon Funding. Pursuant to an order entered July 29, 2018, the claims of the City of New York were disallowed, subject to the right to file amended claims following the filing of certain tax returns by Johnson and the Debtors.

The City of New York filed a limited objection to the Original Disclosure Statement. For the avoidance of doubt, the Debtors intend to pay in full all allowed claims of the City of New York and intend to cure/pay all substantiated HPD and other violations attached to the Premises. The Debtors have been working with the City of New York to address disputes concerning these claims and violations. To the extent that the monetary claims and violations cannot be resolved prior to the confirmation of the Third Amended Plan, the Debtors will reserve 100% of the disputed claim amount and pay the claim once allowed and/or resolved. The Debtors will not be seeking a discharge of the obligation to cure non-monetary health and safety violations and agree

17

that they have an ongoing duty to cure such violations.  The Debtors have agreed that to the extent that the City of New York requires tax returns from the Debtors or Mr. Johnson to determine pre-petition or post petition taxes due with respect to the Premises, the City of New York shall have 30 days after the receipt of such tax returns to file a claim for taxes due. This is referred to in the Third Amended Plan as the NYC Tax Claim Bar Date.

The Office of the United States Trustee identified that the amount of fees set forth in the Original Disclosure Statement which may be due in connection with the final distributions were not $13,000, but will be 1% of the disbursements. This Third Amended Disclosure Statement and the Third Amended Plan provides for payment of such fees.

### 10. Macon Funding Claim Settlement

The Macon Funding Loan represents the single largest secured claim in the cases and encumbers the Premises with a first priority lien and security interest. The resolution of this claim is the second pillar to confirmation of a Chapter 11 plan. Debtors objected to the Macon Funding Loan on, among other grounds, that the loan was usurious. Following extensive settlement negotiations, the Debtors and Macon Funding reached an agreement as to the amount and treatment of the Macon Funding Loan as set forth in that certain Stipulation of Settlement, So Ordered by the Court on December 15, 2018 (ECF Docket No. 127).

### THE THIRD AMENDED PLAN OF REORGANIZATION

The following is a brief summary of the Third Amended Plan. The Third Amended Plan represents a proposed legally binding agreement and creditors and interest holders are urged to consult with their counsel in order to fully understand the Third Amended Plan and to make an intelligent judgment concerning it. The Third Amended Plan governs over any discrepancy in this summary.

As required by the Bankruptcy Code, the Third Amended Plan places claims and interests in various classes and describes the treatment each class will receive. The Third Amended Plan also states whether each class of claims is impaired or unimpaired. If the Third Amended Plan is confirmed, your recovery will be limited to the amount provided by the Third Amended Plan.

Attached hereto as **Exhibits "B-H"** are schedules of all claims and the proposed treatment of such claims.

### A.  Treatment of Unclassified Claims Under the Third Amended Plan

Certain types of claims are automatically entitled to specific treatment under the Bankruptcy Code. They are not considered impaired, and holders of such claims do not vote on the Third Amended Plan. They may, however, object if, in their view, their treatment under the Third Amended Plan does not comply with that required by the Bankruptcy Code. As such, the Debtors have *not* placed the following claims in any class:

#### 1.  *Allowed Administrative Claims other than Claims of Professionals*

Administrative claims are costs or expenses of administration in connection with the Chapter 11 Cases, including, without limitation, any actual, necessary costs and expenses of preserving the Debtors' estates, claims arising post-petition, and all fees and charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930.  The term Administrative Claim does not include Fee Claims and quarterly fees owed to the Office of the U.S. Trustee, which are treated separately in the Third Amended Plan. These Allowed Claims shall be paid in Cash within 10 business days after the Effective Date from the Plan Distribution Fund. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "C"** hereto.

Administrative claims which are disputed as of the date of this Third Amended Disclosure Statement are set forth on **Exhibit C-1** hereto.

19

Claim No. 10 (in Case 18-40321) was filed on January 24, 2019 by Dionicio Bonifacio against 401 Macon Realty (the "**Bonifacio Claim**"). The claim is based upon a state law personal injury action commenced on August 20, 2018 against (i) 401 Macon Realty LLC, as the owner of the improved real property located at 401 Macon Street, Brooklyn, New York ("401 Macon Street") and (ii) Platinum Builders Inc., a contractor retained by 401 Macon to perform work at 401 Macon Street, alleging that Bonifacio sustained personal injuries at 401 Macon Street on June 29, 2018 while working there as a laborer under the employ of R&B Construction, a subcontractor of Platinum Builders, Inc. The action is styled *Dionicio Bonifacio v. 401 Macon Realty LLC and Platinum Builders, Inc.,* Supreme Court of the State of New York Bronx County, Index No. 2966/2018 (the "**State Court Action**"). The State Court Action was stayed as a result of these Bankruptcy Cases. No answer has been filed by the Debtors. The Debtors ((i) deny that any negligence or wrongdoing on the part of any Debtor or any conditions caused by the Debtor at 401 Macon Street caused or contributed to any alleged injury to Bonifacio; (ii) deny any liability on account of any alleged injury; (iii) deny that Bonifacio sustained any injury; (iv) deny that there is any basis for the filing of the Bonifacio Claim; (iv) assert that Debtor's insurance carrier has denied coverage for the Bonafacio Claim based upon an exclusion from coverage for claims asserted by employees of independent contractors which provide separate insurance coverage; (v) assert that 401 Macon is, as a result of retaining Platinum Builders for contracting services at 401 Macon,  an additional insured under the liability insurance policy of Platinum Builders; (vii) assert that 401 Macon has claims for indemnity and contribution against Platinum Builders for any damage award resulting from the State Court Action; and (vii) believe that any damages which may be proven by Bonafacio are within the limits of insurance coverage provided by Platinum Builders.

On January 25, 2018, counsel for the Debtors made demand upon counsel for Mr. Bonifacio, pursuant to Bankruptcy Rule 9011(c), to withdraw the Bonifacio Claim, and advised that in the event that the Bonifacio Claim was not withdrawn, the Debtors intended to seek sanctions against Bonaficio and his counsel.

Subsequent to January 25, 2019, counsel for Debtors and Bonifacio reached an agreement in principal as to the resolution of the Bonifacio Claim and its treatment under the Third Amended Plan (the "**Bonifacio Settlement**"). The Bonifacio Settlement will be reflected in a Stipulation and Order submitted to the Court for approval.  The general terms of the Bonifacio Settlement are:

- The Bonifacio Claim is a single administrative claim against Debtor 401 Macon Realty LLC, allowed in an unliquidated amount.
- Any recovery from the Debtors is limited to the extent of any available insurance coverage of the Debtors.
- The Bonifacio Claim shall receive no distribution from property of the estate under the Third Amended Plan or otherwise.
- No funds shall be reserved for payment of the Bonifacio Claim.
- The Bonifacio Claim shall be discharged upon the Effective Date and appropriate injunction against pursuit against the Debtors.
- Upon approval of this settlement of the Bonifacio Claim, Claim No. 10 shall be deemed amended to reflect an unliquidated claim amount, subject to a determination as to liability, if any, of 401 Macon in the State Court Action.
- Debtor will consent to relief from the stay to allow the State Court Action to proceed to liquidate the liability, if any of 401 Macon. Bonifacio is enjoined from pursuing any recovery on account of the Bonifacio Claim against any Debtor, except to the extent of said Debtor's available insurance coverage, including any excess insurance coverage and Debtors rights in and to such insurance coverage (the "**Available Insurance**").
- Debtors will cooperate with Bonifacio for the purpose of Bonifacio pursuing the Available Insurance, if any, in connection with the Bonifacio Claim and the State Court Action consistent with the treatment of the Bonifacio Claim in the Third Amended Plan

The Bonifacio Claim is now included in **Exhibit C** hereto and such claim no longer presents a material risk to the reorganization.

## 2. Allowed DIP Lender Claim

As of the date hereof, the DIP Lender Claim constitutes an Administrative Claim and junior secured claim on the Premises for the post-petition DIP Loan in the principal amount of $575,000. The DIP Lender Claim may increase by up to an additional $50,000, depending upon the ultimate amount of the Final DIP Loan Advance. Pursuant to the terms of the DIP Loan, the DIP Loan has accrued (and continues to accrue) interest at the rate of 9% per annum, but no payments were required prior to the Effective Date. Assuming an Effective Date on or about February 28, 2019, the estimated accrued interest on the $575,000 portion of the DIP Loan funded as of the date hereof will be $40,487.50, and the reimbursable legal fees of the DIP Lender will be $15,000. Unless the DIP Lender agrees to different treatment, the DIP Lender Claim shall be paid in full in Cash within 10 business days after the Effective Date from the Plan Distribution Fund.

## 3. Allowed Administrative Claims of Professionals

These are Claims by any Professionals for compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 327, 328, 330(a), 331, 503(b) and/or 1103. The Debtors have two Professionals whose employment has been approved by the Bankruptcy Court; (i) the Debtor's bankruptcy counsel, TLG, and (ii) C&I as Accountants to the Debtors. The Allowed Administrative Claims of the Professionals shall be paid in full, in Cash, upon the later of (i) allowance by the Court pursuant to 11 U.S.C. § 330, or (ii) within 10 days after the Effective Date. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "D"** hereto.

### 4. *Statutory Fees*

These are claims for fees for which the Debtors are obligated pursuant to Section 1930(a)(6) of title 28 of the United States Code, together with interest, if any, pursuant to Section 3717 of title 31 of the United States Code. The Debtors shall pay outstanding Statutory Fees in full, in Cash, within 10 business days after the Effective Date. Such fees shall be paid in full, in Cash, in such amount as incurred in the ordinary course of business by the Debtors from the Post-Confirmation Reserve. Thereafter, the Debtors shall continue to pay Statutory Fees due and payable until the earlier of conversion of the Chapter 11 Cases to cases under Chapter 7 of the Code, dismissal or the entry of a final decree closing the Chapter 11 Cases. The Debtors have remained current on the payment of such fees and expect the amount due to be 1% of the final distributions estimated to be approximately $6 million.

### 5. *Allowed Priority Tax Claims*

Priority tax claims are unsecured income, employment, sales, and other taxes described by §507(a)(8) of the Bankruptcy Code. The Debtors shall pay all Allowed Priority Tax claims in full, in Cash from the Plan Distribution Fund within 10 business days after the Effective Date. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "E"** hereto.

### B. Classes of Claims

The following are the classes set forth in the Third Amended Plan, and the proposed treatment that they will receive under the Third Amended Plan:

### 1. *Class 1: Secured Claims*

Class 1 Claims consist of the Secured Claims of (i) Macon Funding (the first mortgage on the Premises); (ii) Mark J. Nussbaum, as Nominee (the second mortgage on the Premises); (iii)

Tower Capital Management (2018 Tax Lien on Macon Street); (iv) the New York City Department of Finance (pre-petition taxes secured by liens on the Premises); (v) the New York City Water Board (pre-petition water/sewer rents secured by liens on the Premises); and (vi) New York City Office of Administrative Trials and Hearings ("**NYC OATH**") (pre-petition ECB Violations affecting Premises). All Class 1 Claims will be paid in full to the extent allowed within 10 business days after the Effective Date. To the extent any objection or litigation regarding any Class 1 Claims is pending on the Effective Date, the full amount of such claims will be reserved until resolution of such objection or litigation.  Class 1 Claims are unimpaired and deemed to accept the Third Amended Plan. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "F"** hereto.

2. *Class 2:  Allowed Non-Tax Priority Claims*

Class 2 Claims consist of Claims entitled to priority under Section 507(a)(3)-(7) of the Bankruptcy Code.  Class 2 Claims shall each receive 100% of their Allowed Class 2 Claims in full within 10 business days after the Effective Date.  To the extent any objection or litigation regarding any Class 2 Claims is pending on the Effective Date, the full amount of such claims will be reserved until resolution of such objection or litigation.  Class 2 Claims are unimpaired and deemed to accept the Third Amended Plan. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "G"** hereto.

3. *Class 3: Allowed General Unsecured Claims*

Class 3 consists of the holders of Allowed General Unsecured Claims. General Unsecured Claims are claims which are not either an Administrative Claim, Secured Claim, Priority Claim, or Interest that arose prior to the Petition Date and include, without limitation,

Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

Class 3 Claim holders shall share in a distribution on a Pro Rata basis of the remaining monies in the Plan Distribution Fund, up to 100%, after payment in full of all Allowed unclassified, Class 1 Claims, Class 2 Claims, and the Post-Confirmation Date Reserve.  Class 3 Claim holders will receive a 100% distribution on account of their claims within 10 business days after the Effective Date.  To the extent any objection or litigation regarding any Class 3 Claims is pending on the Effective Date, the full amount of such claims will be reserved until resolution of such objection or litigation.  Class 3 Claims are unimpaired under the Third Amended Plan and deemed to accept the Third Amended Plan. The Debtors' estimate of these claims outstanding on the Effective Date is set forth on **Exhibit "H"** hereto.

4.      *Class 4: Interests*

Interests are holders of an equity security of or membership interest in any of the Debtors, within the meaning of Bankruptcy Code sections 101(16) and (17), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in a Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest. In addition, all funds remaining after the payment of all Allowed Claims shall be allocated equally among Debtors, Bergen Realty, Macon Realty and Pacific Realty and remitted to the Interest Holders according to their Interests in each such Debtor.

Class 4 consists of the Claims of holders of Interests in the Debtors. Class 4 Interests are as follows:

**E&J Macon LLC**: Ervin Johnson, Jr. 100% owner

**401 Macon Realty LLC**:

- 401 Macon Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 401 Macon Johnson LLC
- 401 Macon Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 401 Macon Holdings LLC

**1050 Bergen Realty LLC**:

- 1049 Bergen Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1049 Bergen Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1049 Bergen Holdings LLC

**1597 Pacific Realty LLC**:

- 1596 Pacific Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1596 Pacific Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1596 Pacific Holdings LLC

Holders of Class 4 Interests shall retain their interests in the Debtors as stated above.  Class 4 Interests are unimpaired and deemed to accept the Third Amended Plan.

**C.  Resolution of Disputed Claims & Reserves**

*1.  Objections.*

An objection to either the allowance of a Claim or an amendment to the Debtors' Schedules shall be in writing and may either be filed with the Bankruptcy Court or pursued and resolved by other means by the Debtors, at any time on or before the Effective Date, or for a period of sixty (60) days thereafter, or within such other time period as may be fixed by the Bankruptcy Court. Except as otherwise set forth in the Third Amended Plan, (i) any Claim against any of the Debtors that arose prior to the Petition Date not filed with the Bankruptcy Court by the applicable bar date, unless specifically scheduled by the Debtors as nondisputed, noncontingent and liquidated, or (ii) any Administrative Claim, other than certain tax claims of the City of New York which shall be filed within 30 days of the receipt of tax returns for the

Debtors and Mr. Johnson 2016 and 2017, not filed with the Bankruptcy Court by **January 24, 2019**, is hereby deemed invalid for all purposes. The Debtors will object to and settle any Claims and shall settle, compromise or prosecute all Claims objections. The Debtors shall have the discretion to settle disputed claims for an amount up to 100% of the amount claimed without further order of the Bankruptcy Court; but may seek an order of the Bankruptcy Court approving a settlement. In the event no order approving a settlement is sought, the Debtors shall file a notice of settlement and distribution on the Court docket.

   2.   *Amendment of Claims.*

   A Claim may be amended prior to the Effective Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules.   After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtors to decrease, but not increase, the face amount thereof.

   3.   *Reserve for Disputed Claims.*

   The Debtors shall reserve for account of each holder of a Disputed Claim (other than the Bonifacio Claim) that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtors may agree upon.   The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.

   4.   *Distributions to Holders of Subsequently Allowed Claims.*

   Unless another date is agreed on by the Debtors and the holder of a particular subsequently Allowed Claim, the Debtors shall, on the first Business Day to occur after the

fourteenth (14th) day after the Allowed amount of such theretofore Disputed Claim is determined, distribute to such holder with respect to such subsequently Allowed Claim the amount of distribution required under the Third Amended Plan at that time, in Cash.  The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

### D.  Plan Funding and Means of Implementing the Third Amended Plan

*1.  Plan Funding.*

As set forth on the chart attached as **Exhibit "B"**, the claims and fees expected to be paid in connection with confirmation of the Third Amended Plan, together with the reserves for disputed claims and post-confirmation professional fees, total approximately $6,407,000. The Debtors have obtained a commitment for financing secured by a first priority lien in and upon the Premises in the amount of not less than $7,750,000 ("**Exit Financing**"). A copy of the commitment letter, redacted for purposes of confidential information is attached hereto as **Exhibit "I"**. The Debtors has obtained Bankruptcy Court approval, pursuant to Order entered on February 11, 2019 as ECF Docket No. 167, to enter into the Exit Financing. Closing of the Exit Financing shall be conditioned upon confirmation of the Third Amended Plan. The Exit Financing shall be contributed to the Plan Distribution Fund.

The Third Amended Plan shall be funded from the Plan Distribution Fund, which consists of (i) all of the Debtor's Cash on hand as of the Confirmation Date, (ii) net proceeds from the DIP Loan, and (iii) the proceeds of the Exit Financing in excess of those necessary to satisfy liens and claims in and upon the Premises. The Plan Distribution Fund shall be held pursuant to Section 345 of the Bankruptcy Code and ultimately distributed by the Disbursing Agent, Teitelbaum Law Group, LLC, in accordance with the terms of the Third Amended Plan. Except

as otherwise provided in the Third Amended Plan, including without limitation Article IX of the Third Amended Plan, the first distribution from the Plan Distribution Fund shall be distributed by the Disbursing Agent on the later of the following dates: (i) on the Effective Date (or within 10 days thereafter to allow for the disbursement of the proceeds of the Exit Financing) to the extent the Claim has been Allowed or (ii) to the extent that a Claim becomes an Allowed Claim after the Effective Date, within fourteen (14) days after the order allowing such Claim becomes a Final Order.

  2. *Means for Implementation.*

On the Effective Date (or within 10 days thereafter to allow for the disbursement of the proceeds of the Exit Financing), the Disbursing Agent shall make the first distribution from the Plan Distribution Fund in accordance with the Third Amended Plan. Thereafter, the Disbursing Agent shall make distributions from the Plan Distribution Fund when a Claim becomes and Allowed Claim as set forth above. After all creditors have been paid, any remaining funds shall be distributed to the Interest Holders according to their interests.

  **E.  Executory Contracts and Leases**

The Third Amended Plan, in Section 7.1, states that during the pendency of the Chapter 11 Cases, the Debtors are deemed to have rejected all written leases or contracts that were executory, in whole or in part, to which any of the Debtors were a party, excepting (i) all written leases, if any, and all month-to-month tenancies affecting the Premises as of the Petition Date, and (ii) that certain Property Management Agreement between the Debtors and USA Quick Solutions Corp. dated as of January 1, 2018 (collectively, the "**Assumed Contracts**"). Any person or entity who may have a Claim that arose from rejection of an executory contract shall, to the extent such Claim becomes an Allowed Claim, has the rights of a holder of an Unsecured

29

Claim in Class 3 with respect thereto**.** The Debtors are not aware of any executory contracts aside from the Assumed Contracts, or any claims arising from the rejection thereof.

**F.  Tax Consequence of the Third Amended Plan**

*Creditors Concerned with How the Third Amended Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

Confirmation may have federal income tax consequences for the Debtors and Creditors. The Debtors have not obtained, and do not intend to request, a ruling from the Internal Revenue Service, nor have the Debtors obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Third Amended Plan are governed by the Internal Revenue Code and the regulations promulgated thereunder.  Creditors are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Third Amended Plan.  The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional.  The federal, state and local tax consequences of the Third Amended Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each holder of a Claim is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Third Amended Plan, including but not limited to the receipt of cash and/or stock under the Third Amended Plan.

*1.  Tax Consequences to the Debtors*

The Debtors may not recognize income as a result of the discharge of debt pursuant to the Third Amended Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy proceedings do not recognize income from discharge of indebtedness.  However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged.  Tax

attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

### 2.  *Tax Consequences to Unsecured Creditors*

An unsecured creditor that receives cash in satisfaction of its Claim may recognize gain or loss, with respect to the principal amount of its Claim, equal to the difference between (i) the creditor's basis in the Claim (other than the portion of the Claim, if any, attributable to accrued interest), and (ii) the balance of the cash received after any allocation to accrued interest.  The character of the gain or loss as capital gain or loss, or ordinary income or loss, will generally be determined by whether the Claim is a capital asset in the creditor's hands.  A creditor may also recognize income or loss in respect of consideration received for accrued interest on the Claim. The income or loss will generally be ordinary, regardless of whether the creditor's Claim is a capital asset in its hands.

### G.    Causes of Action

The Debtors will pursue all Causes of Action that should be pursued, and dismiss all Causes of Action that should be dismissed. The Debtors shall commence such actions no later than one hundred twenty (120) days after the Effective Date. The proceeds from any recoveries from Avoidance Actions shall be used to first pay any outstanding professional fees and expenses incurred in connection with the prosecution of Avoidance Actions, with the balance to be deposited into the Plan Distribution Fund for further distribution in accordance with the Third Amended Plan.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Third Amended Plan must meet the requirements listed in §§ 1129(a) or (b) of the Bankruptcy Code. These include the requirements that the Third Amended Plan must be proposed in good faith; at least one impaired class of claims must accept the plan, without counting votes of insiders; the Third Amended Plan must distribute to each creditor at least as much as the creditor would receive in a chapter 7 liquidation case, unless the creditor votes to accept the Third Amended Plan; and the Third Amended Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.  As there are no impaired classes under the Third Amended Plan, the requirement for an assenting impaired class is not applicable.

### A.  Who May Vote or Object

Any party in interest may object to the confirmation of the Third Amended Plan if the party believes that the requirements for confirmation are not met.

A creditor has a right to vote for or against the Third Amended Plan only if that creditor has a claim that is both (1) allowed or allowed for voting purposes ***and*** (2) impaired.

In this case, all creditors will be paid in full in cash the amount of their allowed claim within 10 days after the Effective Date. There are ***no*** classes impaired under the Third Amended Plan and therefore no claimholders in any class are entitled to vote to accept or reject the Third Amended Plan.

### 1.  What Is an Allowed Claim?

Only a creditor with an allowed claim has the right to vote on the Third Amended Plan. Generally, a claim is allowed if either (1) the Debtors have scheduled the claim on the Debtors' schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2)

the creditor has filed a proof of claim, unless an objection has been filed to such proof of claim. When a claim is not allowed, the creditor holding the claim cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

***The deadline for filing a proof of claim in this case was <u>April 30, 2018</u>.***

***The deadline for filing a proof of administrative claim (other than for certain NYC tax claims) in this case was <u>January 24, 2019</u>.***

2.  *What Is an Impaired Claim?*

As noted above, the holder of an allowed claim has the right to vote only if it is in a class that is *impaired* under the Third Amended Plan. As provided in § 1124 of the Bankruptcy Code, a class is considered impaired if the Third Amended Plan alters the legal, equitable, or contractual rights of the members of that class.

There are **<u>no</u>** Claims impaired under the Third Amended Plan and therefore there are no holders of claims that are entitled to vote.

3.  *Who is **Not** Entitled to Vote*

The holders of the following five types of claims are *not* entitled to vote:

- holders of claims that have been disallowed by an order of the Court;
- holders of other claims that are not "allowed claims";
- holders of claims in unimpaired classes;
- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Bankruptcy Code; and
- administrative expenses.

***Even If You Are Not Entitled to Vote on the Third Amended Plan, You Have a Right to Object to the Confirmation of the Third Amended Plan.***

### B. Votes Necessary to Confirm the Third Amended Plan

There are no impaired classes under this Third Amended Plan. All creditors are deemed to accept the Third Amended Plan pursuant to Bankruptcy Code §1126(f). Therefore, no votes are being solicited to confirm the Third Amended Plan.

### C. Feasibility and Best Interests Test

The Bankruptcy Code requires that in order to confirm the Third Amended Plan, the Bankruptcy Court must find that confirmation of the Third Amended Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors (the "**Feasibility Test**").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtors will possess the resources to meet their obligations under the Third Amended Plan. On the Effective Date (or within 10 days thereafter to allow for the disbursement of the proceeds of the Exit Financing), the Debtors will have sufficient funds to fund the Third Amended Plan. All Allowed Claims will be paid in full. *You Should Consult with Your Accountant or other Financial Advisor If You Have Any Questions Pertaining to These Projections.*

The commitment letter for the Exit Financing demonstrates that the Debtors will have sufficient resources to pay the allowed claims as set forth in the plan and that the Third Amended Plan is feasible.

In addition, the Bankruptcy Court must determine that the values of the distributions to be made under the Third Amended Plan to each Class will equal or exceed the values which would be allocated to such Class in a liquidation under Chapter 7 of the Bankruptcy Code (the "**Best Interest Test**").

The Best Interest Test with respect to each impaired Class requires that each holder of a Claim or Interest in such Class either (i) accept the Third Amended Plan or (ii) receive or retain under the Third Amended Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. Because there are no impaired classes, no scenario exists, including but not limited to Chapter 7 liquidation, under which the creditors would be entitled to receive a distribution greater than that which the Debtors have proposed in their Third Amended Plan. In fact, were the Debtors' assets liquidated in a Chapter 7 case, the creditors of the estate would stand to receive far less as the Administrative costs associated with such a case would be significantly higher.

The Debtors believe that the Third Amended Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest" and feasibility requirements. The Amended Plan is "fair and equitable" and "does not discriminate unfairly". The Third Amended Plan complies with all other requirements of Chapter 11 of the Bankruptcy Code and the Third Amended Plan has been proposed in good faith.

### D. Notices

All notices and correspondence should be forwarded in writing to:

Jay Teitelbaum
TEITELBAUM LAW GROUP, LLC
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670 / Fax: (914) 437-7672
jteitelbaum@tblawllp.com
*Attorneys for the Debtors and Debtors in Possession*

## EFFECT OF CONFIRMATION OF THE PLAN

### A.  Discharge of Debtors and Plan Injunction.

Upon the Effective Date, the Debtors shall receive a discharge to the extent provided for under section 1141 of the Bankruptcy Code.  To the fullest extent permitted by Section 1141(a)-(c) of the Bankruptcy Code, all payments and all distributions pursuant to the Third Amended Plan, shall be in full and final satisfaction, settlement and release of all Claims and Interests, except as otherwise provided in the Third Amended Plan.

For the avoidance of doubt, (i) the Debtors will not seek a discharge of the obligation to remedy non-monetary health and safety violations issued by the City of New York with respect to the Premises, and to pay any fines assessed in connection with such violations to the extent such fines are Allowed Claims; the Debtors agree that they have an ongoing obligation to cure such violations and pay associated Allowed Claims; and (ii) the Debtors will receive a discharge with respect to the Bonifacio Claim.

### B.  Amendment, Modification, Withdrawal or Revocation of the Third Amended Plan.

The Debtors reserve the right, in accordance with section 1127(a) of the Bankruptcy Code, to amend or modify the Third Amended Plan prior to the Confirmation Date. After the Confirmation Date, the Debtors may, upon order of the Bankruptcy Court, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile and inconsistencies in the Third Amended Plan in such manner as may be necessary to carry out the purposes and intent of the Third Amended Plan.

### C.  Unclaimed Property

Distributions to holders of Allowed Claims shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the

Schedules, or to such other address as may be designated by such Creditor in writing to the Debtors. A payment is to be deemed unclaimed if the payment on the distribution is not negotiated by the particular claimholder within 120 days of it being sent by the Debtors. If after thirty (30) days additional attempted notice to the claimholder such distribution remains unclaimed or un-negotiated, then and in that event such holder's Claim shall thereupon be deemed canceled and any such holder shall not be entitled to any payments under the Third Amended Plan, and such unclaimed distributions shall be returned to the Plan Distribution Fund and redistributed in accordance with the Third Amended Plan.

**D.  Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction of the chapter 11 case:

(a)    To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by the Debtor(s);

(b)    To determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees;

(c)    To determine any and all applications pursuant to section 365 of the Bankruptcy Code for the rejection, or assumption and/or assignment, as the case may be, of executory contracts and unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

(d)    To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 157 and 1334;

(e)     To determine all Disputed Claims and amendments to the Debtors' Schedules;

(f)     To adjudicate controversies or interpretations pursuant to any order or stipulation entered by the Bankruptcy Court prior to the Confirmation Date;

(g)     To modify the Third Amended Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in the Third Amended Plan or Confirmation Order to the extent authorized by the Bankruptcy Code;

(h)     To make such orders as are necessary or appropriate to carry out the provisions of the Third Amended Plan;

(i)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Third Amended Plan;

(j)     To commence or prosecute the Causes of Action; and

(k)     To enter a final decree closing the Chapter 11 Case.

### E.  Post-Confirmation Fees, Reserves and Final Decree

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by the Debtors' professionals retained in the Chapter 11 Cases shall be paid by the Debtors within ten (10) days upon presentation of invoices for such professional services without further order of the Bankruptcy Court. All disputes concerning post-confirmation fees and expenses shall be subject to Bankruptcy Court jurisdiction.

The Debtors shall reserve $75,000.00 from the Plan Distribution Fund for the payment of post-Confirmation fees incurred by Debtors' attorneys and accountants in the continued prosecution of estate causes of action, adjudication of Claims, and in connection with the carrying out of duties and responsibilities for payment of Allowed Claims as well as payment of

United States Trustee fees. The balance of such reserve, if any, shall be distributed by the Disbursing Agent in accordance with Article III of the Third Amended Plan.

A final decree shall be entered as soon as practicable after initial distributions have commenced under the Third Amended Plan.

*No further text on this page*

## <u>RECOMMENDATION</u>

The Debtors believe that Confirmation of the Third Amended Plan is preferable to any available alternatives.  The Third Amended Plan will provide greater recoveries than those available in liquidation to all holders of Claims.  Any other alternative would cause significant delay and uncertainty, as well as substantial additional administrative costs.

Dated: White Plains, New York
        February 11, 2019

E&J MACON LLC

By:/s/ Ervin Johnson, Jr
    Ervin Johnson, Jr., Sole Member


1596 PACIFIC REALTY, LLC

By:/s/ Mark J. Nussbaum
    Mark J. Nussbaum, Managing Member


1049 BERGEN REALTY LLC

By: /s/ Mark J. Nussbaum
    Mark J. Nussbaum, Managing Member


401 MACON REALTY LLC

By: /s/ Mark J. Nussbaum
    Mark J. Nussbaum, Managing Member

TEITELBAUM LAW GROUP, LLC
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670 / Fax: (914) 437-7672
jteitelbaum@tblawllp.com
*Attorneys for the Debtors and Debtors in Possession*


By: /s/ Jay Teitelbaum
    Jay Teitelbaum

# EXHIBIT A

TEITELBAUM LAW GROUP, LLC
*Counsel for the Debtors and*
*Debtors in Possession*
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670
Fax: (914) 437-7672
Email: jteiltelbaum@tblawllp.com
Jay Teitelbaum, Esq.
David Brooks, Esq.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

In re:

        E & J MACON LLC, *et al*.,[1]

                                Debtors.

Chapter 11
Case No. 1:18-40321-nhl

*Jointly Administered*

## DEBTORS' THIRD AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

      E & J Macon LLC, 1596 Pacific Realty LLC, 1049 Bergen Realty LLC and 401 Macon Realty LLC, (each a "**Debtor**" and collectively the "**Debtors**") hereby propose the following Debtor's Third Amended Joint Plan of Reorganization (this "**Third Plan**") pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

---

1 Pursuant to order entered January 31, 2018 (ECF Docket No. 15), the Debtors jointly administered under this caption, along with E&J Macon LLC ("**E&J Macon**"), are 1596 Pacific Realty LLC ("**Pacific Realty**"), Case No. 18-40410-nhl, 1049 Bergen Realty LLC ("**Bergen Realty**"), Case No. 18-40412-nhl and 401 Macon Realty LLC ("**Macon Realty**"), Case No. 18-40409-nhl.

# ARTICLE I
## DEFINITIONS

For the purposes of this Third Plan, and the Third Amended Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization (the "**Third Amended Disclosure Statement**") contemporaneously filed herewith, the following terms shall have the respective meanings set forth below:

1.1    "*Additional DIP Loan Advance*" shall mean the DIP Loan advance in the principal amount of $275,000 funded by the DIP Lender subsequent to exhaustion of the Original DIP Loan proceeds, as approved by order of the Bankruptcy Court entered July 26, 2018 (ECF Docket No. 109)

1.2    "*Administrative Claim*" shall mean, except as otherwise set forth in this Third Plan, all or that portion of a Claim for costs or expenses of administration in connection with the Chapter 11 Cases, including, without limitation, any actual, necessary costs and expenses of preserving the Debtors' estates, claims arising post-petition.  The term Administrative Claim does not include Professional Fee Claims, DIP Lender Claims, or fees and charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930, all of which are treated separately in this Third Plan.

1.3    "*Administrative Claim Bar Date*" shall mean January 24, 2019 as established by Order of the Bankruptcy Court entered January 3, 2019 at ECF Docket No. 133 (the "**Administrative Bar Date Order**").

1.4    "*Allowed*" shall mean with respect to any Claim or Interest that portion of such Claim or Interest (i) which has been allowed by a Final Order; (ii) which is allowed under the terms of this Third Plan; or (iii) (a) which has been scheduled by any Debtor as not disputed, not contingent and not unliquidated, or (b) for which a proof of claim was timely filed and otherwise

properly filed on or before the applicable bar date with the Bankruptcy Court and, with respect to Claims described in (iii), as to which no objection to the allowance thereof has been interposed within the period of time fixed by the Bankruptcy Code, this Third Plan in ARTICLE IX hereof, the Bankruptcy Rules or an order of the Bankruptcy Court, or as to which any objection has been determined by a Final Order of the Bankruptcy Court allowing such Claim or any portion thereof. Except as otherwise specifically set forth in this Third Plan, each Allowed Claim shall be net of any valid setoff exercised with respect to such Claim pursuant to the provision of the Bankruptcy Code and applicable law.

1.5     *"Allowed Administrative Claim"* shall mean all or that portion of any Administrative Claim which has become Allowed by a Final Order or was incurred by any Debtor in the ordinary course of business during the Chapter 11 Cases and is due and owing under the terms and conditions of any agreement and applicable law, and timely filed with the Bankruptcy Court on or before the Administrative Claim Bar Date, except as otherwise provided in the Administrative Bar Date Order.

1.6     *"Allowed DIP Lender Claim"* shall mean the allowed claim in the principal amount of the DIP Loan ($575,000 as of the date hereof and subject to further principal advance(s) of up to $50,000, depending on the ultimate amount of the Final DIP Loan Advance, plus accrued and unpaid interest at the rate of 9% per annum in the amount of $38,956.25 as of December 21, 2018, plus interest at the rate of 9% per annum at the per diem amount of $143.75 from and after December 22, 2018 until paid (this per diem figure being based on an outstanding principal balance of $575,000, and subject to increase following funding of Final DIP Loan Advance) plus legal fees, costs and expenses in the amount of $15,000.00, which claim has been granted: (i) pursuant to Bankruptcy Code § 364(b), an unsecured administrative claim; and (ii)

pursuant to Bankruptcy Code §§105 and 364(c)(3), without the necessity of the execution, recordation of filing of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the DIP Lender is hereby granted a duly perfected lien and security interest in and upon the Real Property, junior to valid, duly perfected liens in and upon the Real Property existing (i) as of the Petition Date, with respect to the Original DIP Loan, (ii) as of July 26, 2018, with respect to the Additional DIP Loan Advance, and (iii) as of February 7, 2019, with respect to the Final DIP Loan Advance, and subject to the Carve Out.

1.7    *"Allowed Macon Funding Claim"*  shall mean the allowed secured claim of Macon Funding Associates pursuant to the terms of the Stipulation and Order dated December 11, 2018 and approved by the Bankruptcy Court by order entered December 17, 2018 (ECF Docket No. 127), as follows:

   a.   Pre-petition claim in the principal amount of $3,843,533; plus

   b.   Post-petition interest which shall accrue on the $3,843,533 at the rate of 14% per annum from the Petition Date until paid in full; plus

   c.   Reasonable post-petition legal fees of Gary Ravert, Esq., attorney for Macon Funding, in an amount to be agreed upon by the Parties (which amount shall not bear interest). In the event the Parties cannot agree on the amount of such fees, the dispute shall be submitted to the Bankruptcy Court to be determined in a contested matter subject to the standards employed by Bankruptcy Courts in this District upon consideration of professional fee applications.

   d.   Section 4 (a), (b) and (c) together shall be "**Allowed Claim**" of Macon Funding.

      e.   The Allowed Claim shall be allowed as a secured claim, secured by a first

priority mortgage in and lien upon the Premises.

1.8    *"Avoidance Actions"* shall mean any cause of action assertable under sections

510, 542, 543, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code or non-bankruptcy

law.

1.9    *"Ballot"* shall mean each of the voting forms to be distributed with this Third

Plan to holders of Claims or Interests in Classes that are impaired under the terms of this Third

Plan and are entitled to vote in connection with the solicitation of acceptances of this Third Plan.

***Note that there are no impaired Classes under this Third Plan and no Ballots shall be***
***distributed.***

1.10    *"Bankruptcy Code"* shall mean title 11 of the United States Code, 11 U.S.C. §§

101, et seq., as in effect on the Petition Date.

1.11    *"Bankruptcy Court"* shall mean the United States Bankruptcy Court for the

Eastern District of New York, Brooklyn Division.

1.12    *"Bankruptcy Rules"* shall mean the Federal Rules of Bankruptcy Procedure, as

amended from time to time, as applicable to the Chapter 11 Case, including the Local Rules of

the Bankruptcy Court.

1.13    *"Bar Date"* shall mean April 30, 2018 as the general Bar Date (and July 24, 2018

as the bar date for governmental units) in each case as established by order entered March 2,

2018, (the "**Bar Order**") as ECF Docket No. 32.

1.14    *"Bonifacio Claim"* shall mean that certain claim against 401 Macon Realty in the

amount of $20 million for alleged personal injuries, filed as Claim No. 10  in the E&J Macon

case (1:18-40321).

1.15    *"Bonifacio Settlement"* shall mean the settlement of the Bonifacio Claim as described in the Third Amended Disclosure Statement and that certain Stipulation and Order Resolving Claim of Dionicio Bonifacio filed on February 8, 2019 as ECF Docket No. 164-1.

1.16    *"Business Day"* shall mean any day on which commercial banks are open for business in the City of New York and County of New York, New York, other than, a Saturday, Sunday or legal holiday in the State of New York.

1.17    *"Cash"* shall mean the legal tender of the United States of America.

1.18    *"Causes of Action"* shall mean any claim, cause of action, controversy, demand, agreement, right (including to legal or equitable remedies), action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   Cause of Action shall also include: (a) any right of setoff, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

1.19    *"Chapter 11 Cases"* shall mean the above-captioned cases commenced by the filing of voluntary petitions by the Debtors seeking relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court on the Petition Date.

1.20    *"Claim"* shall mean a claim as defined in section 101(5) of the Bankruptcy Code, including, without limitation, any administrative claim and any claims arising under section 502 of the Bankruptcy Code.

1.21    *"Class"* shall mean a class of holders of Claims or Interests described in ARTICLE III of this Third Plan.

1.22    *"Confirmation Date"* shall mean the date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.23    *"Confirmation Order"* shall mean the order entered by the Bankruptcy Court confirming this Third Plan pursuant to section 1129 of the Bankruptcy Code.

1.24    *"DIP Lender"* shall mean Mark Nussbaum.

1.25    *"DIP Loan"* refers collectively to the Original DIP Loan, Additional DIP Loan Advance, and the Final DIP Loan Advance, and shall mean the debtor-in-possession loan made by the DIP Lender to the Debtors pursuant to Bankruptcy Code 364(b), approved by the DIP Orders of Bankruptcy Court, which DIP Loan is more particularly described in Section II(6) of the Third Amended Disclosure Statement.

1.26    "*DIP Loan Orders*" shall mean the Orders of the Bankruptcy Court at ECF Docket Nos. 43, 59, 109, 136, and 168.

1.27    *"Disbursing Agent"* shall mean the party that shall open and maintain a separate attorney trust bank account in which all cash received for purposes of distribution shall be deposited in accordance with section 345 of the Bankruptcy Code and as otherwise may be required by the Local Rules of the Bankruptcy Court, by the Office of the United States Trustee, or this Third Plan, and shall distribute payments under this Third Plan, which Disbursing Agent shall be Teitelbaum Law Group, LLC, attorneys for the Debtors.

1.28    *"Disputed Claim"* shall mean any Claim (i) which is scheduled by any Debtor as disputed, contingent or unliquidated, or (ii) proof of which has been filed with the Bankruptcy Court and an objection to the allowance has been or is interposed within the period of time set forth in Article IX hereof or by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or an order of the Bankruptcy Court extending such time for the filing of such objections, and as to which, such objection has not been determined by a Final Order of the Bankruptcy Court or withdrawn.  Such Claim, or a portion thereof, shall not be deemed an Allowed Claim until and unless and to the extent it is resolved as an Allowed Claim by a Final Order entered by the Bankruptcy Court.

1.29    *"Disputed Claim Reserve"* shall mean 100% of the amount of all Disputed Claims, which shall be held by the Disbursing Agent from this Third Plan Distribution Fund for distribution pursuant to this Third Plan following the resolution of such Disputed Claim. Pursuant to the Bonifacio Settlement, no reserve shall be established for the Bonifacio Claim.

1.30    *"Effective Date"* shall mean the first Business Day that is one (1) Business Day after the date upon which the Confirmation Order becomes a Final Order.

1.31    *"Estates"* shall mean the estates of the Debtors created by the Chapter 11 Cases pursuant to Bankruptcy Code section 541.

1.32    *"Exit Financing"* shall mean the sum of not less than $7,750,000 to be loaned to the Debtors to fund this Third Plan, on the terms and conditions evidenced by the commitment letter attached hereto as **<u>Exhibit "C"</u>**, and as approved by order of the Bankruptcy Court entered February 11, 2019 as ECF Docket No. 167.

1.33    *"Fee Claim"* shall mean a Claim by any Professional for compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 327, 328, 330(a), 331, 503(b) and/or 1103.

1.34    *"Final DIP Loan Advance"* shall mean the advance(s) in the principal amount of up to $50,000 to be made by the DIP Lender fund to the fees and expenses of Debtors' Exit Financing, as approved by order of the Bankruptcy Court entered February 11, 2019 (ECF Docket No. 168)

1.35    *"Final Order"* shall mean an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket of the Chapter 11 Cases which has not been reversed, vacated or stayed and as to which (a) the time to appeal or seek review or rehearing has expired, and a notice of appeal or request for review or rehearing is not pending, or (b) any appeal that has been taken has been finally determined or dismissed on grounds that affirm the order or judgment, it being further provided that if such appeal or request for a rehearing is pending, that if such order is not stayed pending appeal or rehearing pursuant to Fed. R. Civ. P. 62 as incorporated by Bankruptcy Rule 7062, the order shall be deemed to be a Final Order. The possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9024 may be filed related to such order or judgment shall not cause such order or judgment to not be a Final Order.

1.36    *"Impaired"* shall mean a Claim or class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.37    *"Insider"* shall have the meaning ascribed to it in section 101(31) of the Bankruptcy Code.

1.38    *"Interest"* shall mean the interest of any holder of an equity security of or membership interest in a Debtor, within the meaning of Bankruptcy Code sections 101(16), (17), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in a Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest.

1.39    *"NYC Tax Claim Bar Date"* shall mean, for the City of New York, to the extent that the City of New York requires tax returns from the Debtors or Mr. Johnson to determine pre-petition or post-petition taxes due with respect to the Premises, the City of New York shall have 30 days after the receipt of such tax returns to file a claim for taxes due.

1.40    *"Original DIP Loan"* shall mean the loan in the principal amount of $300,000 made by the DIP Lender to the Debtors in accordance with the order of the Bankruptcy Court entered April 22, 2018  as ECF Docket No. 59.

1.41    *"Petition Date"* shall mean the date each Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code, namely January 19, 2018 for E&J Macon and January 25, 2018 for Pacific Realty, Bergen Realty, and Macon Realty.

1.42    *"Person"* shall mean an individual, corporation, partnership, limited liability company, joint venture, association, joint stock company, trust, estate, unincorporated organization, governmental unit, government (or agency or political subdivision thereof), or other entity, including, without limitation, each of the Debtors.

1.43    *"Plan Distribution Fund"* shall mean (i) all of the Debtors' Cash on hand as of the Confirmation Date, (ii) net proceeds from the DIP Loan, and (iii) proceeds of the Exit

Financing, which collectively shall be used to fund a distribution under the Third Plan to all Allowed Claims, the Disputed Claims Reserve and the Post-Confirmation Date Reserve.

1.44    *"Post-Confirmation Date Reserve"* shall mean the sum of $75,000.00 which shall be reserved from this Third Plan Distribution Fund in order to fund post-Confirmation Date professional fees incurred by Debtor's counsel and accountants in the continued prosecution of any Causes of Action, adjudication of Claims, and in connection with the carrying out of the duties and responsibilities as the Disbursing Agent as well as payment of statutory fees.

1.45    *"Priority Claim"* shall mean a Claim other than an Administrative Claim that is entitled to priority under section 507 of the Bankruptcy Code.

1.46    *"Priority Tax Claim"* shall mean any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.47    *"Pro Rata"* shall mean (i) regarding Claims, the ratio of the amount of an Allowed Claim in a particular Class to the aggregate amount of Allowed Claims in such Class; and (ii) regarding Interests, the ratio of the amount of the Interest to the aggregate amount of Interests.

1.48    *"Professionals"* shall mean professional persons retained under section 327 or 1103 of the Bankruptcy Code pursuant to a Final Order of the Bankruptcy Court and shall specifically include (i) Teitelbaum Law Group, LLC, and (ii) Colasanti & Iurato, LLP.

1.49    *"Professional Fee Claims"* These are Claims by any Professionals for compensation for legal and other services and reimbursement of expenses allowed or awarded under Bankruptcy Code sections 327, 328, 330(a), 331, 503(b) and/or 1103.

1.50    *"Reorganized Debtors"* shall mean each of the Debtors as of the Effective Date.

1.51    *"Second Amended Disclosure Statement"* shall mean the Second Amended Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization filed on January 26, 2019 as ECF Docket No. 147.

1.52    *"Second Amended Plan"* shall mean Debtors' Second Amended Joint Chapter 11 Plan of Reorganization filed on January 26, 2019 as ECF Docket No. 148, which was filed contemporaneously with the Second Amended Disclosure Statement in the Chapter 11 Cases.

1.1    *"Third Amended Disclosure Statement"* shall mean the Third Amended Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization, filed February 4, 2019 as ECF Docket No. 155, and any amendments or modifications thereto made in accordance with the provisions of the Bankruptcy Code.

1.2    *"Third Plan"* shall mean this Third Amended Joint Plan of Reorganization, which was filed February 4, 2019 as ECF Docket No. 155 and subsequently put into final form in accordance with the provisions of Section 1127(a) of the Bankruptcy Code, together with any amendments or modifications hereto made subsequent to the date hereof in accordance with the provisions of the Bankruptcy Code.

1.3    *"Secured Claim"* shall mean a Claim held by creditors secured by mortgages or liens on real and/or personal property owned by a Debtor or upon the leasehold interests and assets of a Debtor in accordance with section 506(a) of the Bankruptcy Code.

1.4    *"Schedules"* shall mean the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments thereto.

1.5      *"Statutory Fees"* shall mean those fees for which the Debtors are obligated pursuant to Section 1930(a)(6) of title 28 of the United States Code, together with interest, if any, pursuant to Section 3717 of title 31 of the United States Code.

1.6      *"Unimpaired"* shall mean, with respect to any Class, that such Class is not Impaired.  All Classes are Unimpaired under this Third Plan.

1.7      *"United States Trustee"* shall mean the United States Trustee for Region 2.

1.8      *"United States Trustee Fees:* shall mean all fees due to the United States Trustee pursuant to 28, U.S.C. §1930.

1.9      *"Unsecured Claim"* shall mean any Claim which is not an Administrative Claim, Secured Claim, Priority Claim, or Interest that arose prior to the Petition Date and includes, without limitation, Claims based upon pre-petition trade accounts payable or Claims based upon the rejection of an executory contract during the pendency of the Chapter 11 Case.

Unless otherwise specified, all section or exhibit references in this Third Plan are to the respective section in, or exhibit to, this Third Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Third Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Third Plan.  The headings in this Third Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Third Plan to an existing document, exhibit or schedule means such document, exhibit or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any

payments or other distribution under the Third Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term regardless of how the term is stated and each stated pronoun is gender neutral.

## ARTICLE II
## DESIGNATION AND TREATMENT OF UNCLASSIFIED CLAIMS

***Attached hereto as EXHIBIT "A" is a schedule off all unclassified claims to be treated under this Third Plan.***

2.1    <u>Allowed Administrative Claims, other than Professional Fee Claims</u>: Shall be paid in full in Cash within 10 business days after the Effective Date.

2.2    <u>Disputed Administrative Claims</u>: **Schedule C-1** identifies the Disputed Administrative Claims and the treatment thereof.  To the extent any Administrative Claim, other than the Bonifacio Claim, is a Disputed Claim as of the Effective Date, the full amount of such Disputed Claim shall be reserved in the Disputed Claims Reserve until resolution of such Disputed Claim.

2.3    <u>Allowed DIP Lender Claim</u>: Unless otherwise agreed by the DIP Lender; shall be paid in full in cash within 10 business days after the Effective Date of this Third Plan.

2.4    <u>Allowed Professional Fee Claims</u>: Shall be paid in full, in Cash, from this Third Plan Distribution Fund upon the later of (i) allowance by the Court pursuant to 11 U.S.C. § 330, or (ii) within 10 days after the Effective Date.

2.5    <u>Bonifacio Claim:</u> Pursuant to the terms of the Bonifacio Settlement, the Bonifacio Claim shall be treated as follows:

- The Bonifacio Claim is a single administrative claim against Debtor 401 Macon Realty LLC, allowed in an unliquidated amount.

- Any recovery from the Debtors is limited to the extent of Debtor's available insurance coverage, including any excess insurance coverage and Debtors rights in and to such insurance coverage (the "**Available Insurance**").
- The Bonifacio Claim shall receive no distribution from property of the estate under this Third Plan or otherwise.
- No funds shall be reserved for payment of the Bonifacio Claim.
- The Bonifacio Claim shall be discharged upon the Effective Date and appropriate injunction against pursuit against the Debtors.
- Upon approval of the Bonifacio Settlement, Claim No. 10 shall be deemed amended to reflect an unliquidated claim amount, subject to a determination as to liability, if any, of 401 Macon in the State Court Action.
- Debtor will consent to relief from the stay to allow the State Court Action to proceed to liquidate the liability, if any of 401 Macon. Bonifacio is enjoined from pursuing any recovery on account of the Bonifacio Claim against any Debtor, except to the extent of any Available Insurance.
- Debtors will cooperate with Bonifacio for the purpose of Bonifacio pursuing the Available Insurance, if any, in connection with the Bonifacio Claim and the State Court Action consistent with the treatment of the Bonifacio Claim herein

2.6    <u>U.S. Trustee Fees</u>: Shall be paid in full, in Cash, within 10 business days after the Effective Date to the extent due as of the Effective Date. Thereafter, the Debtor shall continue to pay U. S. Trustee Fees due and payable until the earlier of conversion of the Chapter 11 Cases to cases under Chapter 7 of the Code, dismissal or the entry of a final decree closing the Chapter 11 Cases.

2.7    <u>Allowed Priority Tax Claims</u>: Shall be paid in full in cash within 10 business days after the Effective Date.

2.8    <u>New York City Building Code Violation Claims</u>: Non-monetary violations issued by the City of New York with respect to the health and safety of the Premises, and any fined levied in connection therewith to the extent determined to be Allowed Claims, shall not be discharged pursuant to this Third Plan and shall be on ongoing obligation of the Debtors to cure and pay on terms acceptable to the City of New York.

**ARTICLE III**
**DESIGNATION OF CLAIMS AND INTERESTS**

***Attached hereto as EXHIBIT "B" are schedules of all classified claims to be treated under this Third Plan.***

3.1    Classification of Claims**.** All Claims against the Debtors, of whatever nature, whether or not scheduled or liquidated, absolute or contingent, and all Interests arising from the ownership of the Debtors whether resulting in an Allowed Claim or an Allowed Interest or not, shall be bound by the provisions of the this Third Plan, and, except those described in Article II of this Third Plan, are classified in Section 3.2 hereof.

A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and is classified in a different Class or Classes to the extent any remainder of the Claim or Interest qualifies within the description of that different Class or Classes.   Unless otherwise provided, to the extent a Claim or Interest qualifies for inclusion in a more specifically defined Class and a more generally defined Class, it shall be included in the more specifically defined Class.

3.2    Classes**.**  For purposes of the Third Plan, those persons holding Claims against, or Interests in, any Debtor are grouped in accordance with section 1122 of the Bankruptcy Code.

**Class 1: Secured Claims**: Class 1 consists of holders of all Secured Claims against any Debtor, if any.

**Class 2: Allowed Non-Tax Priority Claims:** Class 2 consists of the holders of all Allowed Non-Tax Priority Claims against any Debtor.

**Class 3: Allowed Unsecured Claims**: Class 3 consists of the holders of all Allowed, non-priority Unsecured Claims against any Debtor.

**Class 4: Interests:** Class 4 consists of the holders of Interests.

## ARTICLE IV
## TREATMENT OF CLASSES UNDER THIS THIRD PLAN

4.1    <u>Treatment of Claims and Interests</u>.    The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to Article IV of this Third Plan shall be in full satisfaction, release and discharge of all respective Claims or Interests against the Debtors and the holders of an Interest in any Debtor, whether or not a holder of a Claim or Interest receives a distribution under this Third Plan.

4.2    <u>Class 1</u>: All Class 1 Claims allowed as of the Effective Date will be paid in full to the extent Allowed within 10 business days after the Effective Date. To the extent any Class 1 Claim is a Disputed Claim as of the Effective Date, the full amount of such Disputed Claim shall be reserved in the Disputed Claims Reserve until resolution of such Disputed Claim.  Class 1 Claims are Unimpaired and deemed to accept this Third Plan

4.3    <u>Class 2</u>:  All Class 2 Non-Tax Priority Claims allowed as of the Effective Date will be paid in full to the extent allowed within 10 business days after the Effective Date.  To the extent any Class 2 Claim is a Disputed Claim as of the Effective Date, the full amount of such Disputed Claim shall be reserved in the Disputed Claims Reserve until resolution of such Disputed Claim.  Class 2 Claims are Unimpaired and are deemed to accept this Third Plan.

4.4    <u>Class 3</u>: All Class 3 Claims allowed as of the Effective Date will be paid in full to the extent allowed within 10 business days after the Effective Date. To the extent any Class 3 Claim is a Disputed Claim as of the Effective Date, the full amount of such Disputed Claim shall be reserved in the Disputed Claims Reserve until resolution of such Disputed Claim.  Class 3 Claims are Unimpaired and are deemed to accept this Third Plan.

4.5     Class 4:  Holders of Class 4 Interests shall retain their interests in the Debtors as set forth in the Third Amended Disclosure Statement.  In addition, all funds remaining after the payment of all Allowed Claims shall be allocated equally among Debtors, Bergen Realty, Macon Realty and Pacific Realty and remitted to the Interest Holders according to their Interests in each such Debtor. Class 4 Interests are Unimpaired and deemed to accept this Third Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THIS THIRD PLAN

5.1     Presumed Acceptance of this Third Plan.  All Classes are unimpaired under this Third Plan and are, therefore, conclusively presumed to have accepted this Third Plan pursuant to section 1126(f) of the Bankruptcy Code.

5.2     Voting Class.  No Class is Impaired, and there are no holders of Claims that are entitled to vote on this Third Plan.

## ARTICLE VI
## MEANS FOR EXECUTION

6.1     Distribution of Cash.  Except as otherwise provided in this Third Plan, including without limitation Article IX of this Third Plan, the first distribution from this Third Plan Distribution Fund shall be distributed to holders of Allowed Claims under this Third Plan by the Disbursing Agent on the later of the following dates: (i) on the Effective Date (or within 10 business days thereafter to allow for the disbursement of the proceeds of the Exit Financing) to the extent the Claim has been Allowed or (ii) to the extent that a Claim becomes an Allowed Claim after the Effective Date, within fourteen (14) days after the order allowing such Claim becomes a Final Order.

6.2     Means For Implementation.  On the Effective Date (or within 10 business days thereafter to allow for the disbursement of the proceeds of the Exit Financing), the Disbursing Agent shall make the first distribution from this Third Plan Distribution Fund in accordance with

this Third Plan. Thereafter, the Disbursing Agent shall make distributions from this Third Plan Distribution Fund when a Claim becomes and Allowed Claim as set forth above.

6.3    <u>Continuing Existence</u>.  All matters provided under this Third Plan, including all corporate action to be taken or required to be taken by the Debtors, and the execution of all necessary documents shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement or further action by directors of the Debtors. From and after the Effective Date, the Debtors shall continue in existence as Reorganized Debtors. Post- Effective Date fees and expenses of the Professionals shall be paid by the Disbursing Agent within ten (10) business days after presentation of invoices for such professional services to the Disbursing Agent without further order of this Court; provided, however, that if a Reorganized Debtors disputes the amount of post-Effective Date fees and costs to be paid to such Professional, such amount shall be determined by the Bankruptcy Court.

6.4    <u>Vesting of Assets</u>.  Upon the occurrence of the Effective Date, except as otherwise expressly provided in this Third Plan, (a) all property of the Debtors and their Estates shall vest in the Reorganized Debtors.  Except as otherwise set forth in this Third Plan, all Causes of Action shall survive confirmation and the commencement and/or prosecution of Causes of Action shall not be barred or limited by any estoppel, whether judicial, equitable or otherwise.

6.5    <u>Bar Date for Administrative Claims and Professional Fee Claims</u>.  Each Person that desires to assert any Professional Fee Claim must file with the Bankruptcy Court an application for allowance thereof within thirty (30) days after the Effective Date.  The Court has established January 24, 2019 as the deadline for each Person that desires to assert any

Administrative Claim, other than a Professional Fee Claim, the DIP Lender Claim, the U.S. Trustee Fee Claim and with respect to tax claims asserted by the City of New York in connection with the NYC Tax Claim Bar Date.  All such Claims not timely filed shall be forever barred.

6.6    <u>Payment of Professionals for Post-Confirmation Date Services</u>. The reasonable compensation and out-of-pocket expenses incurred post-Effective Date by the Disbursing Agent and Professionals retained in the Chapter 11 Cases for post-Effective Date services shall be paid by the Disbursing Agent from the Post-Confirmation Date Reserve within ten (10) days after presentation of invoices for such professional services to the Disbursing Agent and the Reorganized Debtors with no further order of the Bankruptcy Court; provided, however, that if the Reorganized Debtors and any Professionals cannot agree on the amount of post-Effective Date fees and costs to be paid to such Professionals, such amount shall be determined by the Bankruptcy Court.

**ARTICLE VII**
**<u>EXECUTORY CONTRACTS</u>**

7.1    <u>Rejection</u>.  During the pendency of the Chapter 11 Cases, the Debtors assumed (i) all written leases, if any, and all month-to-month tenancies affecting the Premises as of the Petition Date, and (ii) that certain Property Management Agreement between the Debtors and USA Quick Solutions Corp. dated as of January 1m 2018. Debtors knew of no other executory contracts, but, to the extent existing, Debtors rejected all such other executory leases or contracts to which any of the Debtors were a party. Any executory contract or unexpired lease that was not assumed or rejected shall be deemed rejected as of the Confirmation Date. Any person or entity who may have a Claim that arose from rejection of an executory contract shall, to the extent such Claim becomes an Allowed Claim, have the rights of a holder of an Unsecured Claim in Class 3

with respect thereto. The Debtors are not aware of any claims arising from the rejection of executory contracts.

## ARTICLE VIII
## GENERAL AND MISCELLANEOUS PROVISIONS

8.1    <u>Modification of this Third Plan</u>.  The Debtors reserve the right, in accordance with section 1127(a) of the Bankruptcy Code, to amend or modify this Third Plan prior to the Confirmation Date. After the Confirmation Date, the Debtors may, upon order of the Bankruptcy Court, in accordance with section 1127(b) of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in this Third Plan in such manner as may be necessary to carry out the purposes and intent of this Third Plan.

8.2    <u>Payment Dates</u>. If any payment or act under this Third Plan is required to be made or falls on a date which shall be a Saturday, Sunday or a legal holiday, then the making of such payment or performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed timely.

8.3    <u>Notices</u>. Any notices to be forwarded under this Third Plan shall be in writing and sent by certified mail, return receipt requested, postage pre-paid; or by overnight mail or hand delivery, addressed as follows:

TEITELBAUM LAW GROUP, LLC
1 Barker Avenue, Third Floor
White Plains, New York 10601
Attn: Jay Teitelbaum, Esq.

The above notice party may designate in writing any other address for purposes of this section, which designation shall be effective upon receipt.  Any payment required under this Third Plan shall be deemed to have been paid on the date when such payment is received.

8.4    <u>Enforceability</u>. Should any provision in this Third Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability or operative effect of any and all other provisions of this Third Plan.

8.5    <u>Applicable Law</u>**.** Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Third Plan shall be governed by, and construed and enforced in accordance with, the law of the State of New York.

8.6    <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in this Third Plan shall be binding upon and inure to the benefit of the successors and assigns of such entity.

8.7    <u>Reservation of Rights</u>.  Neither the filing of this Third Plan, nor any statement or provision contained herein, shall be or be deemed to be an admission against interest. In the event that the Effective Date does not occur, neither this Third Plan nor any statement contained herein may be used or relied upon in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Cases.

8.8    <u>U.S. Trustee Fees and Monthly Operating Reports</u>. After the Confirmation Date, the Reorganized Debtors will pay or cause the payment of fees, and any applicable interest, incurred pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. section 3717 and will file or cause the filing with the Bankruptcy Court and serve or cause service on the U.S. Trustee of quarterly operating reports while the Chapter 11 Cases remain open, unless the Bankruptcy Court orders otherwise.

8.9    <u>Post-Confirmation Date Reserve.</u>  The sum of $75,000.00 shall be reserved from this Third Plan Distribution Fund in order to fund post-Confirmation Date professional fees incurred by Debtors' counsel, accountants and the Disbursing Agent in the continued prosecution

of the Causes of Action, adjudication of Claims, and in connection with the carrying out of the duties and responsibilities as the Disbursing Agent as well as payment of United States Trustee fees. The balance of such reserve, if any, shall be distributed in accordance with Article III hereof. The amount of the reserve shall not be a limit on the fees which may be allowed and paid in connection with post-confirmation services.

8.10    The Debtors reserve the right to seek such further and additional orders of the Bankruptcy Court to aid in carrying out the purpose and intent of this Third Plan.

## ARTICLE IX
## RESOLUTION OF DISPUTED CLAIMS & RESERVES

9.2    <u>Objections</u>.  An objection to either the allowance of a Claim or an amendment to the Debtors' Schedules shall be in writing and may either be filed with the Bankruptcy Court or pursued and resolved by other means by the Debtors or any one of them, at any time on or before the Effective Date, or for a period of sixty (60) days thereafter, or within such other time period as may be fixed by the Bankruptcy Court. Except as otherwise set forth in this Third Plan, (i) any Claim against a Debtor that arose prior to the Petition Date not filed with the Bankruptcy Court by the applicable bar date, unless specifically scheduled by a Debtor as nondisputed, non-contingent and liquidated, or (ii) any Administrative Claim not filed with the Bankruptcy Court by the applicable bar date, is hereby deemed invalid for all purposes. The Debtors will object to and settle any Claims and shall settle, compromise or prosecute all Claims objections. The Debtors shall have the discretion to settle disputed claims for an amount up to 100% of the amount claimed without further order of the Bankruptcy Court. The Debtors may seek an order of the Bankruptcy Court approving a settlement. In the event no order is sought the Debtors shall file a notice of settlement and distribution on the Court Docket.

9.3     Amendment of Claims.   A Claim may be amended prior to the Effective Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Bankruptcy Code and Bankruptcy Rules. After the Effective Date, a Claim may be amended as agreed upon by the holder thereof and the Debtors to decrease, but not increase, the face amount thereof.

9.4     Distributions to Holders of Subsequently Allowed Claims.   Unless another date is agreed on by the Debtors and the holder of a particular subsequently Allowed Claim, the Debtors shall, on the first Business Day to occur after the fourteenth (14th) day after the Allowed amount of such theretofore Disputed Claim is determined, distribute to such holder with respect to such subsequently Allowed Claim the amount of distribution required under this Third Plan at that time, in Cash.  The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed amount of its Claim, regardless of when distribution thereon is made to or received by such holder.

9.5     Reserve for Disputed Claims.  The Debtor shall reserve on account of each holder of a Disputed Claim that property which would otherwise be distributable to such holder on such date were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon.  The property so reserved for the holder, to the extent such Disputed Claim is allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed to such holder.  For the avoidance of doubt no funds shall be reserved on account of the Bonifacio Claim.

## ARTICLE X
## CAUSES OF ACTION

10.1    The Reorganized Debtors shall have the exclusive right, power, authority and standing to pursue all Causes of Action and shall commence such actions no later than one

hundred fifty (150) days after the Effective Date, unless otherwise extended by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002. Proceeds recovered from all Causes of Action will be deposited into this Third Plan Distribution Fund and shall be used to pay outstanding professional fees and expenses incurred by the Reorganized Debtors in connection with the prosecution of Causes of Action, subject to review for reasonableness, and to fund distributions in accordance with this Third Plan.

**ARTICLE XI**
**EFFECT OF CONFIRMATION OF THIS THIRD PLAN**

11.1    <u>Discharge of Debtors and Plan Injunction.</u> Except to the extent otherwise provided in this Third Plan, the treatment of all Claims against or Interests in the Debtors under this Third Plan shall be in exchange for and in complete satisfaction, discharge and release of, all Claims against and Interests in the Debtors of any nature whatsoever, known or unknown, including any interest accrued or expenses incurred thereon from and after the Petition Date, or against the estates or properties or interests in property. Except as otherwise provided in this Third Plan, upon the Effective Date, all Claims against and Interests in the Debtors shall be deemed satisfied, discharged and released in full in exchange for the consideration provided under this Third Plan. Except as otherwise provided in this Third Plan, all entities shall be precluded from asserting against the Debtors, this Third Plan Funder, or Reorganized Debtors, or their respective properties or interests in property, any other Claims or Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date.

11.2    For the avoidance of doubt, non-monetary obligations of the Debtors to cure health and safety violations issued by the City of New York, and monetary fines, penalties and

fees assessed in connection therewith, to the extent determined to be Allowed Claims, shall be ongoing obligations of the Debtors and shall not be discharged or released by this Third Plan except to the extent that the Debtors cure such violations to the satisfaction of the City of New York and pay associated monetary fines, penalties and fees to the extent constituting Allowed Claims.

## ARTICLE XII
## DISTRIBUTIONS AND UNCLAIMED PAYMENTS

12.1    Distributions to holders of Allowed Claims shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or if no proof of claim is filed, on the Schedules, or to such other address as may be designated by such Creditor in writing to a Debtor. A payment is to be deemed unclaimed if the payment on the distribution is not negotiated by the particular claimholder within 120 days of it being sent by a Debtor.

12.2    If after thirty (30) days additional attempted notice to the claimholder such distribution remains unclaimed or un-negotiated, then and in that event such holder's Claim shall thereupon be deemed canceled and any such holder shall not be entitled to any payments under this Third Plan, and such unclaimed distributions shall be returned to this Third Plan Distribution Fund and redistributed in accordance with this Third Plan.

12.3    All funds remaining after the payment of all Allowed Claims shall be allocated equally among Debtors, Bergen Realty, Macon Realty and Pacific Realty and remitted to the Interest Holders according to their Interests in each such Debtor.

## ARTICLE XIII
## CONDITIONS PRECEDENT TO CONFIRMATION
## OF THIS THIRD PLAN AND EFFECTIVE DATE

13.1    <u>Conditions to the Occurrence of Confirmation</u>. The occurrence of the Confirmation Date shall be subject to the entry of the Confirmation Order in form and substance reasonably acceptable to the Debtors.

13.2    <u>Conditions to the Occurrence of the Effective Date</u>. This Third Plan may not be effective until the entry of the Confirmation Order as a Final Order that remains in full force and effect and shall not have been stayed or reversed.

13.3    <u>Non-Occurrence of the Effective Date; Non-Waiver of Conditions</u>. In the event that the Debtors determine that the conditions to the Effective Date set forth in the immediately foregoing paragraph of this Third Plan cannot be satisfied, the Debtors may propose a new plan, may modify this Third Plan as permitted by law, or may request other appropriate relief. Nothing in this provision shall be deemed to be an extension of the Debtors' exclusive right to file a plan and/or to solicit acceptances of a plan pursuant to Bankruptcy Code section 1121(d).

## ARTICLE XIV
## EVENTS OF DEFAULT

14.1    <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default under this Third Plan ("**Event of Default**"):

(a)    The failure of the Debtors, after receipt of ten (10) business days written notice, to make any payment required to be made under this Third Plan, which failure, prior to the receipt of the ten (10) days written notice, shall have remained uncured for a period of thirty (30) days after the date such payment is required to be made, unless the time for such payment has been extended in accordance with this Third Plan.

(b)    The failure of the Debtors to comply with any of the other covenants contained in this Third Plan, which failure shall remain uncured for a period of thirty (30) days after the Debtor has received ten (10) days written notice of such failure.

14.2    <u>Effect of Default</u>. In the event that the Debtors default under the provisions of this Third Plan, and such default is not cured, then, at the option of any creditor or the United States Trustee, a motion may be filed with the Bankruptcy Court seeking an Order of the Bankruptcy Court compelling the Debtors to make such payment or act in a manner consistent with the provisions of this Third Plan or seeking the conversion of the Chapter 11 Case to a Chapter 7 proceeding.

## ARTICLE XV
## <u>VOTING INSTRUCTIONS</u>

15.1    <u>Voting Is Not Required</u>. As there are no Impaired Classes, this Third Plan is deemed to be accepted and voting is not required.

## ARTICLE XVI
## <u>POST-CONFIRMATION REPORTS</u>

16.1    The Debtors shall be responsible for filing post-confirmation reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. section 1930 until the earlier of (a) conversion or dismissal of the Chapter 11 Cases or (b) entry of a final decree closing the Chapter 11 Cases.

## ARTICLE XVII
## <u>RETENTION OF JURISDICTION</u>

17.1    The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Cases:

(a)    To determine all controversies relating to or concerning the allowance of Claims upon objection to such Claims by the Debtors;

(b)     To determine requests for payment of Claims entitled to priority under section 507(a)(1) of the Bankruptcy Code, including any and all applications for compensation for professional and similar fees

(c)     To determine any and all applications pursuant to section 365 of the Bankruptcy Code for the rejection, or assumption and/or assignment, as the case may be, of executory contracts and unexpired leases to which a Debtor is a party or with respect to which a Debtor may be liable, and to determine and, if necessary, to liquidate, any and all Claims arising therefrom;

(d)     To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C. sections 157 and 1334.

(e)     To determine all Disputed Claims and amendments to the Debtors' Schedules;

(f)     To adjudicate controversies or interpretations pursuant to any order or stipulation entered by the Bankruptcy Court prior to the Confirmation Date;

(g)     To modify this Third Plan pursuant to section 1127 of the Bankruptcy Code or to remedy any defect or omission or reconcile any inconsistencies in this Third Plan or Confirmation Order to the extent authorized by the Code;

(h)     To make such orders as are necessary or appropriate to carry out the provisions of this Third Plan;

(i)     To resolve controversies and disputes regarding the interpretation or enforcement of the terms of this Third Plan;

(j)     To commence or prosecute the Causes of Action; and

(k)     To enter a final decree closing the Chapter 11 Cases.

Dated:    February 11, 2019

E&J MACON LLC

By:/s/ Ervin Johnson, Jr
     Ervin Johnson, Jr., Sole Member


1596 PACIFIC REALTY, LLC

By:/s/ Mark J. Nussbaum
     Mark J. Nussbaum, Managing Member


1049 BERGEN REALTY LLC

By: /s/ Mark J. Nussbaum
     Mark J. Nussbaum, Managing Member


401 MACON REALTY LLC

By: /s/ Mark J. Nussbaum
     Mark J. Nussbaum, Managing Member

TEITELBAUM LAW GROUP, LLC
1 Barker Avenue, Third Floor
White Plains, New York 10601
Tel: (914) 437-7670 / Fax: (914) 437-7672
jteitelbaum@tblawllp.com
*Attorneys for the Debtors and Debtors in Possession*


By: /s/ Jay Teitelbaum
     Jay Teitelbaum

**Exhibit "A"**

**Schedule of Unclassified Claims and Proposed Treatment**

**Note:** This Schedule assumes a 2/28/19 Confirmation Date for purposes of calculating Allowed Claim Amounts

| ALLOWED ADMINISTRATIVE CLAIMS OTHER THAN CLAIMS OF PROFESSIONALS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **401 MACON REALTY LLC – Case No. 18-40409-nhl** | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| Macon 7 | NYC Dept. of Finance | Post-Petition Property Taxes on Macon Street | $32,911.43 | Liquidated | Undisputed | $0.00 | $32,911.43 |
| Macon 6 | New York City Water Board | Post-Petition Water/Sewer Rents | $31,039.59 | Liquidated | Undisputed | $0.00 | $31,039.59 |
| E&J 10[1] | Dionicio Bonifacio | Tort Claim | Face Amount $20,000,000 - actual claim unliquidated | Unliquidated | Settled | $0.00 | Allowed in unliquidated amount per Bonifacio Settlement. Any recovery from Debtors is limited to insurance, if any. ***No distribution from Estate property***. |

---

[1] Claim is against 401 Macon Realty LLC but POC inadvertently filed in E & J Macon Realty LLC Case

1

## ALLOWED ADMINISTRATIVE CLAIMS OTHER THAN CLAIMS OF PROFESSIONALS
### *Continued*

**401 MACON REALTY LLC – Case No. 18-40409-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Macon Street not yet captured in Admin Claim | N/A | N/A | N/A | N/A | $32,123.44 |

|  |  |  |  | | Subtotal Allowed Non-Professional Admin. Claims: | | $96,074.46 |
|---|---|---|---|---|---|---|---|
|  |  |  |  | | Subtotal Allowed Non-Professional Admin. Claim Reserves: | | $0.00 |

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Pacific 8 | NYC Dept. of Finance | Post-Petition Property Taxes on Pacific Street | $31,504.11 | Liquidated | Undisputed | $0.00 | $31,504.11 |
| Pacific 7 | New York City Water Board | Post-Petition Water/Sewer Rents | $8351.79 | Liquidated | Undisputed | $0.00 | $8351.79 |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Pacific Street not yet captured in Admin Claim | N/A | Liquidated | Undisputed | $0.00 | $14,068.10 |

|  |  |  |  | | Subtotal Allowed Non-Professional Admin. Claims: | | $53,924.00 |
|---|---|---|---|---|---|---|---|
|  |  |  |  | | Subtotal Allowed Non-Professional Admin. Claim Reserves: | | $0.00 |

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "A"

| ALLOWED ADMINISTRATIVE CLAIMS OTHER THAN CLAIMS OF PROFESSIONALS *Continued* | | | | | | | |
|---|---|---|---|---|---|---|---|
| **1049 BERGEN REALTY LLC – Case No. 18-40412-nhl** | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| Bergen 6 | NYC Dept. of Finance | Post-Petition Property Taxes on Bergen Street | $3607.82 | Liquidated | Undisputed | $0.00 | $3607.82 |
| Bergen 5 | New York City Water Board | Post-Petition Water/Sewer Rents | $1383.73 | Liquidated | Undisputed | $0.00 | $1383.73 |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Bergen Street not yet captured in Admin Claim | N/A | Liquidated | Undisputed | $0.00 | $5312.70 |

| | | | | | Subtotal Allowed Non-Professional Admin. Claims: | | $10,304.25 |
|---|---|---|---|---|---|---|---|
| | | | | | Subtotal Allowed Non-Professional Admin. Claim Reserves: | | $0.00 |
| | | | | | **TOTAL ALLOWED NON-PROFESSIONAL ADMIN. CLAIMS:** | | **$149,994.23** |
| | | | | | **TOTAL ALLOWED NON-PROFESSIONAL ADMIN. CLAIM RESERVES:** | | **$0.00** |

| ALLOWED DIP LENDER CLAIM | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| N/A | Mark J. Nussbaum | Principal | N/A | Liquidated | Undisputed | $0.00 | $575,000.00[2] |
| | | Estimated Post-Petition Interest as of Effective Date | N/A | Liquidated | Undisputed | $0.00 | $40,487.50[3] |
| | | Post-Petition Legal Fees of DIP Lender | N/A | Liquidated | Undisputed | $0.00 | $15,000.00 |

[2]  Plus up to an additional $50,000 in principal, depending upon ultimate amount of Final DIP Loan Advance
[3]  Plus any interest accrued on Final DIP Loan Advance

3

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "A"

| | | | | | | | TOTAL ALLOWED DIP LENDER CLAIM: $630,487.50 |

## U.S. TRUSTEE FEES

**E& J Macon Realty LLC – Case No. 1:18-40321-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| N/A | US Trustee | Estimated Trustee Fees Owed as of Effective Date | N/A | Unliquidated | Undisputed | $0.00 | $60,000.00 |

| | | | | | | | TOTAL U.S. TRUSTEE FEES: $60,000.00 |

## ALLOWED PRIORITY TAX CLAIMS

**E& J Macon Realty LLC – Case No. 1:18-40321-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 2 | IRS | Partnership Taxes | $2,000.00 | Liquidated | Undisputed | $0.00 | $2,000.00 |
| E&J 5 | NYC Dept. of Finance | UBT and/or GCT | $77,412.80 | Disallowed subject to Claimant's right to refile, per terms of Order at ECF Docket No. 111 | Disputed | $77,412.80 | TBD |

| | | | | | TOTAL ALLOWED PRIORITY TAX CLAIMS: $2,000.00 |
| | | | | | TOTAL ALLOWED PRIORITY TAX CLAIMS RESERVES:    $77,412.80 |

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "A"

| ALLOWED PROFESSIONAL FEE CLAIMS | |
|---|---|
| **TEITELBAUM LAW GROUP, LLC** | |
| Unpaid Allowed Legal Fees & Expenses – 1st Interim Fee Application | $53,575.07 |
| Holdback – 1st Interim Fee Application | $16,849.20 |
| Estimated Allowed Legal Fees & Expenses – 2nd Interim Fee Application | $49,150.29 |
| Estimated Holdback – 2nd Interim Fee Application | $11,773.80 |
| Estimated Allowed Legal Fees and Expenses for 10/1/18 – Effective Date (after application of $5288.50 Retainer) | $85,000.00 |
| **Subtotal** | **$216,348.36** |
| **COLUSANTI & IURATO** | |
| Unpaid Allowed Accounting Fees & Expenses – 1st Interim Fee Application | 0.00 |
| Holdback – 1st Interim Fee Application | $2,589.40 |
| Estimated Allowed Accounting Fees & Expenses – 2nd Interim Fee Application | $8939.20 |
| Estimated Holdback – 2nd Interim Fee Application | $2,234.80 |
| Estimated Allowed Accounting Fees and Expenses for 10/1/18 – Effective Date | $25,000.00 |
| **Unapplied Retainer** | ($9642.40) |
| **Subtotal** | **$29,121.00** |
| **GRAND TOTAL OF ESTIMATED PROFESSIONAL FEES AS OF CONFIRMATION DATE:** | **$245,469.36** |
| **RESERVE FOR POST-CONFIRMATION PROFESSIONAL FEES:** | **$75,000.00** |
| **COMBINED ESTIMATED PROFESSIONAL FEES & POST-CONFIRMATION FEE RESERVE:** | **$320,469.36** |

*Continued Next Page.*

5

## DISPUTED ADMINISTRATIVE CLAIMS

**E & J MACON LLC – Case No. 18-40321-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | $28,750.00 | $28,750.00 | $28,750.00 |
| E&J 11 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | $346,202.00 | Fees and interest to be calculated pursuant to Stipulation |

**Subtotal Disputed Admin. Claims:    $374,952.00**
**Subtotal Disputed Admin. Claim Reserves:    $28,750.00**

**401 MACON REALTY LLC – Case No. 18-40409-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9[4] | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Macon 9[5] | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |
| Macon 8 | NYC Office of Administrative Trials & Hearings | Post-Petition ECB Violations | $7,260.23 | $7,260.23 | $7,260.23 |

---

[4] E&J Claim 9 included in tables of all Debtors as it is unclear if said claim is solely against E&J Macon LLC. Associated figures are included on E&J Macon table only, to avoid distortion

[5] E&J Claim 11, Macon Claim 9, Pacific Claim 10, and Bergen Claim 8 based on same underlying claim. Associated figures are thus included on E&J Macon table only, to avoid distortion

6

|  | | | | Subtotal Disputed Admin. Claims: | **$7,260.23** |
|  | | | | Subtotal Disputed Admin. Claim Reserves: | **$7,260.23** |

## DISPUTED ADMINISTRATIVE CLAIMS
### *Continued*

### 1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Pacific 9 | NYC OATH | Post-Petition ECB Violations | $2502.10 | $2502.10 | $2502.10 |
| Pacific 10 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |

|  | | | | Subtotal Disputed Admin. Claims: | **$2502.10** |
|  | | | | Subtotal Disputed Admin. Claim Reserves: | **$2502.10** |

### 1049 BERGEN REALTY LLC – Case No. 18-40412-nhl

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Bergen 8 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |
| Bergen 7 | NYC Office of Administrative Trials and Hearings | Post-Petition ECB Violation | $330.00 | $330.00 | $330.00 |

|  | | | | Subtotal Disputed Admin. Claims: | **$330.00** |
|  | | | | Subtotal Disputed Admin. Claim Reserves: | **$330.00** |

|  | | | | TOTAL DISPUTED ADMIN. CLAIMS: | **$385,044.33** |
|  | | | | TOTAL DISPUTED ADMIN. CLAIM RESERVES: | **$38,842.33** |

7

**Exhibit "B"**

**Schedule of Classified Claims and Proposed Treatment**

**Note:** This Schedule assumes a 2/28/19 Confirmation Date for purposes of calculating Allowed Claim Amounts

| CLASS 1- SECURED CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| **E& J Macon Realty LLC – Case No. 1:18-40321-nhl** | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| E&J 1 | Macon Funding Associates | First Mortgage on Premises | $4,136,954.96 | Liquidated | Stipulation of Settlement | $0.00 | $3,843,533.00 (principal) |
| | | Estimated Unpaid Post-Petition Interest | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $280,425.06 (estimated) |
| | | Estimated Post-Petition Legal Fees of Mortgagee as of Effective Date | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $25,000.00 (estimated) |
| E&J 3 | NYC Water Board | Pre-Petition Water/Sewer | $40,210.80 | Withdrawn | N/A - Withdrawn | $0.00 | $0.00 |

1

| CLASS 1- SECURED CLAIMS Cont. | | | | | | | |
|---|---|---|---|---|---|---|---|
| **E& J Macon Realty LLC – Case No. 1:18-40321-nhl - *Continued*** | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| E&J 4 | NYC Dept. of Finance | Pre-Petition Property Taxes | $15,819.59 | Liquidated | Disputed - duplicative with Pacific Claim 8 to extent of $19.06, remaining $14,640.74 represents taxes on 401 Macon St. sold as 2018 Tax Lien | $0.00  [$15,049.20 reserved for Macon Claim 4, which covers same taxes on 401 Macon Street] | $0.00 |
| E&J 6 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 (Pre-Petition P&I) | Liquidated | Undisputed | $0.00 | $576,334.86[1] |
|  |  | Post-Petition Interest as of Effective Date | N/A | Liquidated | Undisputed | $0.00 | $67,666.91 |
| E&J 7 | NYC OATH | Pre-Petition ECB Violations on 401 Macon Street | $12,392.28 | Liquidated | Undisputed | $0.00 | $0 [$12,392.28 included in 401 Macon Realty LLC Secured Claims Total] |
| N/A | Internal Revenue Service | Federal Tax Lien against Ervin Johnson recorded in Kings County for 2009-2012 Unpaid Income Tax | $238,549.40 | Unliquidated | Disputed | $238,549.40 | TBD |

---

[1] Subject to an additional $50,000 extension of credit, plus interest thereon, if the Debtors' motion to amend the DIP Loan is approved by the Bankruptcy Court.

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "B"

| CLASS 1- SECURED CLAIMS Cont. | | | | | | | |
|---|---|---|---|---|---|---|---|
| **E& J Macon Realty LLC – Case No. 1:18-40321-nhl** - *Continued* | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| N/A | A.P.R.A. Fuel Oil Buyers Group Inc. | $210,861.02 Judgment against Ervin Johnson, Jr. docketed 4/27/15 in Kings County Supreme Court | $210,861.02 | Liquidated | Settled – Release of Lien Filed | $0.00 | $0.00 |
| N/A | A.P.R.A. Fuel Oil Buyers Group Inc. | $227,891.50 Judgment against Ervin Johnson, Jr. docketed 9/28/16 in Kings County Supreme Court | $227,891.50 | Liquidated | Settled – Release of Lien Filed | $0.00 | $0.00 |
| N/A | Highrise Maintenance Corp LLC | Mechanics Lien against E&J Macon filed on Macon Street 10/18/17 – CFRN #3679037-01 | N/A – Mechanic's Lien Amount:$97,935.00 | Liquidated | Expired 10/18/18, Lien Extinguished. | $0.00 | $0.00 |
| | | | | | **Subtotal Secured Claims:** | **$4,792,959.83** | |
| | | | | | **Subtotal Secured Claim Reserves:** | **$238,549.40** | |

| CLASS 1- SECURED CLAIMS Cont. | | | | | | | |
|---|---|---|---|---|---|---|---|

**401 MACON REALTY LLC – Case No. 18-40409-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Macon 1 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with E&J Claim 1 | 0.00 | 0.00 |
| Macon 2 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with E&J Claim 6 | 0.00 | 0.00 |
| Macon 3 | NYC OATH | Pre-Petition ECB Violations on Macon Street | $360.00 | Liquidated | Undisputed | $0.00 | $360.00 |
| Macon 4 | New York City Dept. of Finance | Pre-Petition Real Estate Taxes | $15,049.20 | Liquidated | Disputed[2] | $15,049.20 | $0.00 |
| Macon 5 | New York City Water Board | Pre-Petition Water/Sewer Rents | $30,613.22 | Liquidated | Undisputed | $0.00 | $30,613.22 |
| E&J 7 | NYC OATH | Pre-Petition ECB Violations on Premises | $12,392.28 | Liquidated | Undisputed | $0.00 | $12,392.28 |
| N/A | Dept. of Housing Preservation and Development ("**HPD**") | Mechanics Lien filed on 9/30/15 – Index #3436077 | Unknown – No Amount Listed | Unliquidated | Disputed. Lien to be extinguished | $0.00 | $0.00 |

---

[2] Taxes forming basis of claim were sold as 2018 Tax Lien to Tower Capital Management – See CFRN 2018000284202, Pg. 40

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "B"

## CLASS 1- SECURED CLAIMS
### *Cont.*

**401 MACON REALTY LLC – Case No. 18-40409-nhl - *Continued***

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| N/A | Tower Capital Management | 2018 Tax Lien on Macon Street | N/A | Liquidated | Undisputed | $0.00 | $13,465.00 |
| | | Interest through Confirmation Date | N/A | Liquidated | Undisputed | $0.00 | $1,254.96 |

**Subtotal Secured Claims: $58,085.46**
**Subtotal Secured Claim Reserves:     $15,049.20**

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Pacific 2 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with E&J Claim 1 | $0.00 | $0.00 |
| Pacific 3 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with E&J Claim 6 | $0.00 | $0.00 |

| Pacific 4 | Teitelbaun Law Group - Protective Claim | Satisfied Neighborhood Housing Services Mortgage on Pacific Street - Open of Record due to Collateral Assignment to Citbank | $0.00 | Liquidated | Settled – Citibank to "re-assign" mortgage Neighborhood Housing Services to cure title defect | $0.00 | $0.00 |
| Pacific 5 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $635.42 | Liquidated | Undisputed | $0.00 | $635.40 |
| Pacific 6 | New York City Water Board | Pre-Petition Water/Sewer Rents | $8,196.34 | Liquidated | Undisputed | $0.00 | $8,196.34 |
| N/A | HPD | Mortgage from Ervin Johnson to HPD recorded at Reek 4914 Page 2248 | Unknown – Original Principal Sum is $164,500 | Unliquidated | Disputed (Paid Off but no Satisfaction filed by HPD). Lien to be extinguished. | $0.00 | 0.00 |
| | | | | | **Subtotal Secured Claims: $8,831.74** | | |
| | | | | | **Subtotal Secured Claim Reserves:      $0.00** | | |

*Continued Next Page*

## CLASS 1- SECURED CLAIMS
### *Cont.*

**1049 BERGEN REALTY LLC – Case No. 18-40412-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Bergen 1 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with E&J Claim 1 | $0.00 | $0.00 |
| Bergen 2 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with E&J Claim 6 | 0.00 | 0.00 |
| Bergen 3 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $1816.25 | Liquidated | Undisputed | $0.00 | $1816.25 |
| Bergen 4 | New York City Water Board | Pre-Petition Water/Sewer Rents | $1401.24 | Liquidated | Undisputed | $0.00 | $1401.24 |
| N/A | HPD | Mechanics Lien filed on 6/3/10 as CFRN 2744265-05 | Unknown – No Amount Listed | Unliquidated | Disputed, Lien to be Extinguished. | $0.00 | $0.00 |

**Subtotal Allowed Secured Claims: $3217.49**
**Subtotal Allowed Secured Claim Reserves: $0.00**
**TOTAL SECURED CLAIMS: $4,863,094.52**
**TOTAL SECURED CLAIM RESERVES:   $253,598.60**

7

| CLASS 2: ALLOWED NON-TAX PRIORITY CLAIMS | | | | | | | |
|---|---|---|---|---|---|---|---|
| None | | | | | | | |
| TOTAL ALLOWED NON-TAX PRIORITY CLAIMS: $0.00 TOTAL ALLOWED NON-TAX PRIORITY CLAIM RESERVES:   $0.00 | | | | | | | |
| CLASS 3: ALLOWED UNSECURED CLAIMS | | | | | | | |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| Pacific 1 | Consolidated Edison Company of New York, Inc. | Unpaid Electrical Charges | $608.62 | Liquidated | Undisputed | $0.00 | $608.62 |
| TOTAL ALLOWED UNSECURED CLAIMS: $608.62 TOTAL ALLOWED UNSECURED CLAIM RESERVES:   $0.00 | | | | | | | |

*Continued Next Page*

8

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization - Exhibit "B"

## CLASS 4: INTERESTS

**E&J MACON LLC**: Ervin Johnson, Jr. 100% owner

**401 MACON REALTY LLC**:
- 401 Macon Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 401 Macon Johnson LLC
- 401 Macon Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 401 Macon Holdings LLC

**1049 BERGEN REALTY LLC**:
- 1049 Bergen Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1049 Bergen Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1049 Bergen Holdings LLC

**1596 PACIFIC REALTY LLC**:
- 1596 Pacific Johnson LLC – 51% owner of Debtor
  - Ervin Johnson, Jr. - 100% owner of 1596 Pacific Johnson LLC
- 1596 Pacific Holdings LLC – 49% owner of Debtor
  - Mark J. Nussbaum – 100% owner of 1596 Pacific Holdings LLC

# Exhibit "C"

Exit Financing Commitment Letter



# L&L Capital Partners LLC

50 Bank Street
New York, New York 10014
(646) 867 - 1284

Dated:                                   February 7th, 2019

Borrower's Name:   *Mark Nussbaum & Ervin Johnson*
                                        (Principal)

Address:  *c/o 225 Broadway - 39th Fl, NY, NY, 10007*

**Collateral:**    401 Macon, Brooklyn (first lien), 1049 Bergen, Brooklyn (first lien), 1596 Pacific, Brooklyn (first lien), 2836 W. 19th, Brooklyn (first lien), 2136 Fulton, Brooklyn (first lien). Owners of 2836 W 19th Street and 2136 Fulton shall be guarantors and will give a note and mortgage to secure the guaranty as to the collateral properties currently in Bankruptcy. In addition, Lender will receive a pledge of borrowers shares of the entity. (the " Collateral Property")

**Borrower's Attorney:** *Mark J. Nussbaum & Associates, PLLC*
        Address:  *225 Broadway - 39th Fl, NY NY 10007*

        Tel/Fax  *212 632 8300 / 212 344-8100*
        E-mail  *nussbaum @ mjnpllc.com*

Dear Mr. Nussbaum:

As used herein, the words "we", "our" refer to the Lender identified herein as L&L Capital Partners LLC, the words "you", "your" refer to the Borrower named herein.

This letter is to advise you that we are willing to make a loan to the Borrower for a term of twenty four months, in the amount of $ **7,500,000.00, with $ 6,900,000.00 funded at closing, $ 300,000.00 of which to be held as an interest reserve, $ 100,000.00 of which is to be held as an escrow (see clause 21), and an additional $ 600,000.00 to be held back by lender at lenders sole discretion and to be funded at a later date during the term of the loan, subject to lenders walk-through of the various premises and borrower providing new leases to lender at that time,** with borrower only paying interest on the funded portion of the loan ($ 6,900,000.00 at closing of Bankruptcy workout), and for the amounts loaned to be evidenced by a note and to be secured by a first mortgage on the Collateral Properties except 2136 Fulton Street which shall be a second mortgage on the Collateral Property.

The placing of your loan will be subject to the following terms and conditions:

1.      The term of the Loan shall be two (2) years (the "Term") and shall be payable in monthly installments of interest only at the rate of ten and three quarters (10.75%) percent per annum for the first year of the loan, and at the rate of eleven and one half (11.50%) percent per annum for the second year of the loan.

2.      At closing, you shall prepay interest for 'odd days' interest, a $ 1,500.00 application fee, a 2.00% origination fee, and pay interest on a monthly basis thereafter. Borrower will pay real estate taxes and all other applicable municipals charges at such time that theў are due.

3.      This mortgage loan shall be pre-payable in full at any time, upon fifteen (15) days prior written notice. If should Borrower payoff the loan on or before August 15th, 2019, Borrower will be required to pay a prepayment premium of sixty [60] days of per diem interest, a $ 2,500.00 administration fee and Lenders reasonable legal fees. If Borrower pays off after August 15th, 2019, then Borrower will pay a prepayment premium of thirty [30] days of per diem interest, a$ 2,500.00 administration fee and Lenders reasonable legal fees. <u>Lender agrees to either assign or satisfy the loan at borrowers option pursuant to the terms of this section.</u>

4.      Title to the Property shall continuously be held by the existing entity controlled by the Borrower; the loan shall be personally guaranteed by **principals with a greater than 10% share of the entity and/or** Ervin Johnson & Mark Nussbaum (the "Guarantors") and all ownership interests shall be pledged as additional security.

5.    Lender shall have no obligation under this letter if the loan does not close by March 15th, 2019, for any reason other than Lenders willful default.

6.    This commitment is conditioned upon a review of your title to the real estate which will serve as security for this loan, and such title must be satisfactory to Lender's attorney in his sole discretion.

7.    Borrower must pay all charges for title searches, surveys, mortgage tax, recording fees, filing fees, title insurance premiums, departmental searches, tax searches, and other expenses incurred in connection with this loan, and you hereby agree to indemnify us for these expenses, except as to such expenses to be paid at closing out of the loan proceeds as hereinabove set forth.

8.    You must pay the legal fee of our attorney for preparation of loan documents and closing of loan.  Our attorney is Vincent Georgetti, Esq., of Braunstein Turkish LLP, 7600 Jericho Turnpike #Suite 402,  Phone: (516) 802-0700 (X312), E-mail Address(es):  vg@braunsteinturkish.com.  The legal fee shall be billed on an hourly basis for expedited service.  These fees shall be owed by Borrower and Guarantor regardless of whether the Loan closes.

9.    You must pay a commitment fee of $20,000.00 upon the signing of this letter.  This fee is non-refundable if this loan does not close for any reason other than our willful default.  If the commitment fee is not paid in cash, we shall have the right to terminate this agreement, if a check or other instrument given in payment of this commitment fee is dishonored. The commitment fee will be applied at closing to Lender's legal fees, and any actual out of pocket costs of Lender, any overage will be applied to Borrower.

10.    You must produce two (2) days prior to closing, a policy of Building Risk and Fire Insurance in an amount not less than the full replacement value of the Property and Collateral Property  **paid-up** for at least six months, naming Lender as mortgagee-insured and containing a clause that said policy will not be canceled except upon prior written notice of impending cancellation given to us.  The mortgage will provide that fire insurance must be maintained on the property during the term of the loan in an amount sufficient to prevent the application of co-insurance, which amount shall be determined by Lender.  This shall include any additional premiums for vacant structures and/or for Builder's Risk in the event you commence any construction at the Collateral Properties. The owner-insured on the fire insurance policy must be correctly designated **at least two (2) days prior to closing**. Borrower must provide Builder's Risk policies for any vacant properties.

3

11.    You shall execute the note and mortgage(s) and any other documents required by our attorney at closing.

12.    The loan shall be fully due and payable upon a sale or other transfer of the Property.

13.    All loan documentation shall be in the forms prepared by our attorney and shall be available for inspection by your attorney before the loan closing.

14.    In the event of a default under the note and a resulting acceleration of the indebtedness, interest on the unpaid balance of principal and on any advances shall continue to be calculated at the rate of twenty four (24%) percent per annum (giving credit for that portion thereof which has been prepaid) until the maturity date set forth in the note.  If the note is not fully paid on or before its maturity date, after default or otherwise, interest after said date shall accrue at the rate of twenty four (24%) percent per annum until actual payment of the note in full.

15.    The note shall provide among other things that upon default you must pay an attorney's fee if any incurred by us in enforcing the note or mortgage(s).

16.    The mortgage(s) shall contain certain environmental representations and a hold harmless provision as to hazardous wastes.

17.    This commitment shall be void if the real property is damaged by fire prior to loan closing, at our sole discretion.

18.    This commitment is also subject to all items set forth below, which must be delivered to, and be acceptable to, Lender, in Lender's sole discretion:
    (a)   Title report - all exceptions to title to be cleared;
    (b)   Insurance as set forth above.
    (c)   All lease agreements, management agreements, and DHCRs for the past three years for each apartment subject to rent stabilization.
    (d)   A mortgage statement from the 1st Mortgage on 2136 Fulton Street confirming the loan is up to date.
    (e)   All ECB, HPD, & DOB violations to either be paid or escrowed prior to or at closing. Undertaking to clear all existing violations in six months from loan closing, with an option to extend for an additional three months with showing of good cause or effort to remove the violations.

4

    (f)    All Partnership agreements relating to the owning LLC evidencing that Ervin Johnson no longer manages the property.

    (g)    Proof of removal from AEP program for all properties previously subject to AEP.

19.    You agree to hold us harmless and indemnify us against claims by any broker you dealt with regarding this transaction, other than Joe Alenick and Judah Trynaur whose commission shall be paid by us.

20.    <u>You must specify your desire to receive funds by Wire Transfer at least One (1) Business Day prior to closing.</u> Absent timely instructions for a Wire, you will receive funds at closing by attorney escrow check.

21.    Lender shall permit releases of the individual collateral properties in exchange for payoffs of the following principal payment reduction, in addition to all outstanding interest charges due and owing, reasonable legal fees, a $ 1,500.00 administration fee per partial release or assignment, and before August 15th, 2019 60 days of per diem interest on the principal being paid down, and on or after August 15th 2019, 30 days of per diem interest on the principal being paid:

**Release Schedule:**
401 Macon, Brooklyn  $ 3,500,000 (Principal Due)
1049 Bergen, Brooklyn $ 1,600,000 (Principal Due)
1596 Pacific, Brooklyn $ 1,600,000 (Principal Due)
2836 W. 19th, Brooklyn $ 400,000 (Principal Due)
2136 Fulton, Brooklyn $ 400,000 (Principal Due)
**Total:**           $ 7,500,000.00

22.    Lender to escrow $ 100,000.00 at loan closing. These funds are to be held by lender and to be released at such time that Title issues a Mortgage Tax Endorsement to the loan policy. At such time that Title issues the Mortgage Tax Endorsement, L&L will apply the $ 100,000.00 escrow to the interest reserve. If the City rejects the collateral mortgage and mortgage tax is demanded, lender will pay it up to the escrow amount. Any amount above the Mortgage Tax escrow will be due and payable by borrower. If the amount requested by the City is less than the Escrow then lender will the sums due out of the escrow and the balance will be applied to the interest reserve.

Lender materially relies on the above representations in granting this commitment.   Lender relies on each and every statement contained in Borrower's application for this loan.

Very truly yours,
L&L Capital Partners LLC

By: _____
            Adam Nagin, Manager

I HAVE READ AND AGREE TO THESE TERMS:

DATE OF ACCEPTANCE: _2—7—/9_

6

**Exhibit B**

Schedule of Claims and Proposed Treatment

**Note:** This Schedule assumes a 2/28/19 Confirmation Date for purposes of calculating Allowed Claim Amounts

| ALLOWED DIP LENDER CLAIM | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| N/A | Mark J. Nussbaum | Principal | N/A | Liquidated | Undisputed | $0.00 | $575,000.00[1] |
| | | Estimated Post-Petition Interest as of Effective Date | N/A | Liquidated | Undisputed | $0.00 | $40,487.50[2] |
| | | Post-Petition Legal Fees of DIP Lender | N/A | Liquidated | Undisputed | $0.00 | $15,000.00 |
| | | | | | **Subtotal** | **$0.00** | **$630,487.50** |

| STATUTORY FEES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Reserve Amount | Allowed Claim Amount |
| N/A | US Trustee | Estimated Trustee Fees Owed as of Effective Date | N/A | Unliquidated | Undisputed | $0.00 | $60,000.00[3] |
| | | | | | **Subtotal** | **$0.00** | **$60,000.00** |

---

[1] Plus up to $50,000 in additional principal, depending upon ultimate amount of DIP Loan Advance
[2] Pus any accrued interest on Final DIP Loan Advance
[3] 1% of actual distributions

| PROFESSIONAL FEES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Reserve Amount | Allowed Claim Amount |
| N/A | Teitelbaum Law Group, LLC | Legal Fees & Expenses | N/A | Unliquidated | Undisputed | $0.00 | $216,348.36[4] |
| N/A | Colusanti & Iurato | Accounting Fees & Expenses | N/A | Unliquidated | Undisputed | $0.00 | $29,121.00[5] |
| N/A | Teitelbaum Law Group, LLC and Colusanti & Iurato | Post-Confirmation Professional Fees Reserve | N/A | Unliquidated | Undisputed | $75,000.00 | TBD |
| | | | | | **Subtotal** | **$75,000.00** | **$245,469.36** |

***Continued Next Page***

---

[4] See Exhibit "D" for detail
[5] See Exhibit "D" for detail

| **E& J MACON REALTY LLC – Case No. 1:18-40321-nhl** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| E&J 1 | Macon Funding Associates | First Mortgage on Premises | $4,136,954.96 | Liquidated | Stipulation of Settlement | $0.00 | $3,843,533.00 (principal) |
| | | Estimated Unpaid Post-Petition Interest | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $280,425.06 (estimated) |
| | | Estimated Post-Petition Legal Fees of Mortgagee as of Effective Date | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $25,000.00 (estimated) |
| E&J 2 | IRS | Partnership Tax | $2,000.00 | Liquidated | Undisputed | $0.00 | $2,000.00 |
| E&J 3 | NYC Water Board | Pre-Petition Water/Sewer | $40,210.80 | Withdrawn | N/A - Withdrawn | $0.00 | $0.00 |
| E&J 4 | NYC Dept. of Finance | Pre-Petition Property Taxes | $15,819.59 | Liquidated | Disputed - duplicative with Pacific Claim 8 to extent of $19.06, remaining $14,640.74 represents taxes on 401 Macon St. sold as 2018 Tax Lien | $0.00[6] | $0.00 |

---

[6] $15,049.20 reserved for Macon Claim 4, which covers same taxes on 401 Macon Street

Exhibit "B" to Third Amended Disclosure Statement

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 5 | NYC Dept. of Finance | UBT and/or GCT | $77,412.80 | Disallowed subject to Claimant's right to refile, per terms of Order at ECF Docket No. 111 | Disputed | $77,412.80 | TBD |
| E&J 6 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises – Pre-Petition P&I | $576,334.86 | Liquidated | Undisputed | $0.00 | $576,334.86 |
|  |  | 2nd Mortgage on Premises – Estimated Post-Petition Interest | N/A | Liquidated | Undisputed | $0.00 | $67,666.91 |
| E&J 7 | NYC OATH | Pre-Petition ECB Violations on Premises | $12,392.28 | Liquidated | Undisputed | $0.00 | $12,392.28 |
| E&J 8 | NYC Dept. of Finance | Post-Petition Property Taxes | $68,023.36 | Liquidated | Disputed as Duplicative with Macon Claim 7, Bergen Claim 7 & Pacific Claim 8 (all of which are allowed) | $0.00 | $0.00 |

Exhibit "B" to Third Amended Disclosure Statement

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | $28,750.00 | Liquidated | Disputed | $28,750.00 | $0.00 |
| E&J 10[7] | Dionicio Bonifacio | Tort Claim | Face Amount $20,000,000, actual claim unliquidated | Unliquidated | Settled | $0.00 | Allowed in unliquidated amount per Bonifacio Settlement. Any recovery from Debtors limited to "Available Insurance" as defined therein. *No distribution from Estate property*. |
| E&J 11 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | Liquidated | Disputed | $0.00 | Fees and interest to be calculated pursuant to Stipulation (ECF Docket No. 127) |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim | Allowed Claim Amount |

---

[7] Claim is against 401 Macon Realty LLC but POC inadvertently filed in E & J Macon Realty LLC Case

|  |  |  |  |  |  | Reserve Amount |  |
|---|---|---|---|---|---|---|---|
| N/A | IRS | Federal Tax Lien against Ervin Johnson recorded in Kings County for 2009-2012 Unpaid Income Tax | Unknown – Face Amount is $238,549.40 | Unliquidated | Disputed | $238,549.40 | TBD |
| N/A | A.P.R.A. Fuel Oil Buyers Group Inc. | $210,861.02 Judgment against Ervin Johnson, Jr. docketed 4/27/15 in Kings County Supreme Court | $210,861.02 | Liquidated | Settled – Release of Lien Filed | $0.00 | $0.00 |
| N/A | A.P.R.A. Fuel Oil Buyers Group Inc. | $227,891.50 Judgment against Ervin Johnson, Jr. docketed 9/28/16 in Kings County Supreme Court | $227,891.50 | Liquidated | Settled – Release of Lien Filed | $0.00 | $0.00 |
| N/A | Highrise Maintenance Corp LLC | Mechanics Lien against E&J Macon filed on Macon Street 10/18/17 – CFRN #3679037-01 | N/A – Mechanic's Lien Amount:$97,935.00 | Liquidated | Expired 10/18/18, Lien Extinguished. | $0.00 | $0.00 |
|  |  |  |  |  | **Subtotal** | **$344,712.20** | **$4,807,352.11** |

## 401 MACON REALTY LLC – Case No. 18-40409-nhl

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Macon 1 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with E&J Claim 1 | 0.00 | 0.00 |
| Macon 2 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with E&J Claim 6 | 0.00 | 0.00 |
| Macon 3 | NYC OATH | Pre-Petition ECB Violations on Macon Street | $360.00 | Liquidated | Undisputed | $0.00 | $360.00 |
| Macon 4 | New York City Dept. of Finance | Pre-Petition Real Estate Taxes | $15,049.20 | Liquidated | Disputed[8] | $15,049.20 | $0.00 |
| Macon 5 | New York City Water Board | Pre-Petition Water/Sewer Rents | $30,613.22 | Liquidated | Undisputed | $0.00 | $30,613.22 |
| Macon 6 | New York City Water Board | Post-Petition Water/Sewer Rents | $31,039.59 | Liquidated | Undisputed | $0.00 | $31,039.59 |
| Macon 7 | NYC Dept. of Finance | Post-Petition Property Taxes on Macon St. | $32,911.43 | Liquidated | Undisputed | $0.00 | $32,911.43 |
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve | Allowed Claim Amount |

[8] Taxes forming basis of claim were sold as 2018 Tax Lien to Tower Capital Management – See CFRN 2018000284202 , Pg. 40

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Macon 8 | NYC OATH | Post-Petition ECB Violations | $7,260.23 | Liquidated | Disputed | $7,260.23 | $0.00 |
| Macon 9 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | Liquidated | Disputed | $0.00 | Fees and interest to be calculated pursuant to Stipulation (ECF Docket No. 127) |
| E&J 9[9] | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | | | |
| E&J 10[10] | Dionicio Bonifacio | Tort Claim | Face Amount $20,000,000, actual claim unliquidated | Unliquidated | Settled | $0.00 | Allowed in unliquidated amount per Settlement Agreement. Any recovery from Debtors is limited to insurance, if any. ***No distribution from Estate property***. |

---

[9] E&J Claim 9 included in tables of all Debtors as it is unclear if said claim is solely against E&J Macon LLC. Associated figures are included on E&J Macon table only, to avoid distortion

[10] Claim is against 401 Macon Realty LLC but POC inadvertently filed in E & J Macon Realty LLC Case

| | | | | | | Reserve Amount | |
|---|---|---|---|---|---|---|---|
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Macon Street not yet captured in Admin Claim | N/A | Liquidated | Undisputed | $0.00 | $32,123.44 (estimated) |
| N/A | Tower Capital Management | 2018 Tax Lien | N/A | Liquidated | Undisputed | $0.00 | $13,465.00 |
| | | Interest through Confirmation Date | N/A | Liquidated | Undisputed | $0.00 | $1,254.96 |
| N/A | Dept. of Housing Preservation and Development ("**HPD**") | Mechanics Lien filed on 9/30/15 – Index #3436077 | Unknown – No Amount Listed | Unliquidated | Disputed. Lien to be extinguished | $0.00 | $0.00 |
| | | | | | **Subtotal** | **$22,309.43** | **$141,767.64** |

*Continued Next Page.*

Exhibit "B" to Third Amended Disclosure Statement

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Pacific 1 | Consolidated Edison Company of New York, Inc. | Unpaid Electrical Charges | $608.62 | Liquidated | Undisputed | $0.00 | $608.62 |
| Pacific 2 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with allowed E&J Claim 1 | $0.00 | $0.00 |
| Pacific 3 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with allowed E&J Claim 6 | $0.00 | $0.00 |
| Pacific 4 | Teitelbaun Law Group - Protective Claim | Satisfied Neighborhood Housing Services Mortgage on Pacific Street - Open of Record due to Collateral Assignment to Citibank | $0.00 | Liquidated | Settled – Citibank to "re-assign" mortgage Neighborhood Housing Services to cure title defect | $0.00 | $0.00 |
| Pacific 5 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $635.42 | Liquidated | Undisputed | $0.00 | $635.40 |

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Pacific 6 | New York City Water Board | Pre-Petition Water/Sewer Rents | $8,196.34 | Liquidated | Undisputed | $0.00 | $8,196.34 |
| Pacific 7 | New York City Water Board | Post-Petition Water/Sewer Rents | $8351.79 | Liquidated | Undisputed | $0.00 | $8,351.79 |
| Pacific 8 | NYC Dept. of Finance | Post-Petition Property Taxes on Pacific Street | $31,504.11 | Liquidated | Undisputed | $0.00 | $31,504.11 |
| Pacific 9 | NYC OATH | Post-Petition ECB Violations on Pacific Street | $2502.10 | Liquidated | Disputed | $2502.10 | $0.00 |
| Pacific 10 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | Liquidated | Disputed | $0.00 | Fees and interest to be calculated pursuant to Stipulation (ECF Docket No. 127) |

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 9[11] | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | | | |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Pacific Street not yet captured in Admin Claim | N/A | Liquidated | Undisputed | $0.00 | $14,068.10 |
| N/A | HPD | Mortgage from Ervin Johnson to HPD recorded at Reek 4914 Page 2248 | Unknown – Original Principal Sum is $164,500 | Unliquidated | Disputed (Paid Off but no Satisfaction filed by HPD). Lien to be extinguished. | $0.00 | 0.00 |
| | | | | | **Subtotal** | **$2502.10** | **$63,364.36** |

*Continued Next Page.*

---

[11] E&J Claim 9 included in tables of all Debtors as it is unclear if said claim is solely against E&J Macon LLC. Associated figures are included on E&J Macon table only, to avoid distortion

**1049 BERGEN REALTY LLC – Case No. 18-40412-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Bergen 1 | Macon Funding Associates | 1st Mortgage on Premises | $4,136,954 | Liquidated | Disputed as Duplicative with allowed E&J Claim 1 | $0.00 | $0.00 |
| Bergen 2 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 | Liquidated | Disputed as Duplicative with allowed E&J Claim 6 | 0.00 | 0.00 |
| Bergen 3 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $1816.25 | Liquidated | Undisputed | $0.00 | $1816.25 |
| Bergen 4 | New York City Water Board | Pre-Petition Water/Sewer Rents | $1401.24 | Liquidated | Undisputed | $0.00 | $1401.24 |
| Bergen 5 | New York City Water Board | Post-Petition Water/Sewer Rents | $1383.73 | Liquidated | Undisputed | $0.00 | $1383.73 |
| Bergen 6 | NYC Dept. of Finance | Post-Petition Property Taxes on Bergen Street | $3607.82 | Liquidated | Undisputed | $0.00 | $3607.82 |
| Bergen 7 | NYC OATH | Post-Petition ECB Violations on Bergen Street | $330.00 | Liquidated | Disputed | $330.00 | $0.00 |
| Bergen 8 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | Liquidated | Disputed | $0.00 | Fees and interest to be calculated pursuant to Stipulation (ECF Docket No. 127) |

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 9[12] | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | | | |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Bergen Street not yet captured in Admin Claim | N/A | Liquidated | Undisputed | $0.00 | $5312.70 |
| N/A | HPD | Mechanics Lien filed on 6/3/10 as CFRN 2744265-05 | Unknown – No Amount Listed | Unliquidated | Disputed, Lien to be Extinguished. | $0.00 | $0.00 |
| | | | | | **Subtotal** | **$330.00** | **$13,521.74** |
| | | | | | **GRAND TOTAL** | **$444,853.73** | **$5,961,962.71** |
| | | **COMBINED GRAND TOTAL ALLOWED CLAIMS AND RESERVES** | | | | **$6,406,816.44** | |

---

[12] E&J Claim 9 included in tables of all Debtors as it is unclear if said claim is solely against E&J Macon LLC. Associated figures are included on E&J Macon table only, to avoid distortion

**Exhibit "C"**

**Allowed Administrative Claims other than Claims of Professionals**

**Note:** This Schedule assumes a 2/28/19 Confirmation Date for purposes of calculating Allowed Claim Amounts

| 401 MACON REALTY LLC – Case No. 18-40409-nhl | | | | |
|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Allowed Claim Amount |
| Macon 7 | New York City Dept. of Finance | Post-Petition Real Estate Taxes on Macon Street | $32,911.43 | $32,911.43 |
| Macon 6 | New York City Water Board | Post-Petition Water/Sewer Rents on Macon Street | $31,039.59 | $31,039.59 |
| E&J 10[1] | Dionicio Bonifacio | Tort Claim | Face Amount $20,000,000 - actual claim unliquidated | Allowed in unliquidated amount per Bonifacio Settlement. Any recovery from Debtors is limited to "Available Insurance" as defined therein. ***No distribution from Estate property***. |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Macon Street not yet captured in Admin Claim | N/A | $32,123.44 |
| | | | **Subtotal Non-Professional Admin. Claims:** | **$96,074.46** |
| | | | **Subtotal Non-Professional Admin. Reserves:** | **$0.00** |

*Continued Next Page.*

---

[1] Claim is against 401 Macon Realty LLC but POC inadvertently filed in E & J Macon Realty LLC Case

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Allowed Claim Amount |
|---|---|---|---|---|
| Pacific 8 | New York City Dept. of Finance | Post-Petition Real Estate Taxes on Pacific Street | $31,504.11 | $31,504.11 |
| Pacific 7 | New York City Water Board | Post-Petition Water/Sewer Rents | $8351.79 | $8351.79 |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Pacific Street not yet captured in Admin Claim | N/A | $14,068.10 |
| | | **Subtotal Non-Professional Admin. Claims:** | | **$53,924.00** |
| | | **Subtotal Non-Professional Admin. Reserves:** | | **$0.00** |

**1049 BERGEN REALTY LLC – Case No. 18-40412-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Allowed Claim Amount |
|---|---|---|---|---|
| Bergen 6 | New York City Dept. of Finance | Post-Petition Real Estate Taxes on Bergen Street | $3607.82 | $3607.82 |
| Bergen 5 | New York City Water Board | Post-Petition Water/Sewer Rents on Bergen Street | $1383.73 | $1383.73 |
| N/A | NYC Dept. of Finance | Post-Petition Property Taxes on Bergen Street not yet captured in Admin Claim | N/A | $5312.70 |
| | | **Subtotal Non-Professional Admin. Claims:** | | **$10,304.25** |
| | | **Subtotal Non-Professional Admin. Reserves:** | | **$0.00** |
| | | **TOTAL NON-PROFESSIONAL ADMIN. CLAIMS:** | | **$160,302.71** |
| | | **TOTAL NON-PROFESSIONAL ADMIN. RESERVES:** | | **$0.00** |

## Exhibit "C-1"

## DISPUTED ADMINISTRATIVE CLAIMS

| E & J MACON LLC – Case No. 18-40321-nhl | | | | | |
|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | $28,750.00 | $28,750.00 | $28,750.00 |
| E&J 11 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | $346,202.00 | $346,202.00 | Fees and interest to be calculated pursuant to Stipulation |
| | | | Subtotal Disputed Admin. Claims: | | **$374,952.00** |
| | | | Subtotal Disputed Admin. Claim Reserves: | | **$28,750.00** |

| 401 MACON REALTY LLC – Case No. 18-40409-nhl | | | | | |
|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
| E&J 9[1] | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Macon 9[2] | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |
| Macon 8 | NYC Office of Administrative Trials & Hearings | Post-Petition ECB Violations | $7,260.23 | $7,260.23 | $7,260.23 |
| | | | Subtotal Disputed Admin. Claims: | | **$7,260.23** |
| | | | Subtotal Disputed Admin. Claim Reserves: | | **$7,260.23** |

---

[1] E&J Claim 9 included in tables of all Debtors as it is unclear if said claim is solely against E&J Macon LLC. Associated figures are included on E&J Macon table only, to avoid distortion

[2] E&J Claim 11, Macon Claim 9, Pacific Claim 10, and Bergen Claim 8 based on same underlying claim. Associated figures are thus included on E&J Macon table only, to avoid distortion

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Pacific 9 | NYC OATH | Post-Petition ECB Violations | $2502.10 | $2502.10 | $2502.10 |
| Pacific 10 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |

**Subtotal Disputed Admin. Claims:    $2502.10**
**Subtotal Disputed Admin. Claim Reserves:    $2502.10**

**1049 BERGEN REALTY LLC – Case No. 18-40412-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Portion of Claim Disputed | Reserve Amount |
|---|---|---|---|---|---|
| E&J 9 | NYC Dept. of Finance | Unincorporated Business Tax for 1/20/18 – 12/31/18 | *See E&J Macon LLC Table* | | |
| Bergen 8 | Macon Funding Associates | Legal Fees & Interest due per Claim Settlement Stipulation (ECF Docket No. 127) | *See E&J Macon LLC Table* | | |
| Bergen 7 | NYC Office of Administrative Trials and Hearings | Post-Petition ECB Violation | $330.00 | $330.00 | $330.00 |

**Subtotal Disputed Admin. Claims:    $330.00**
**Subtotal Disputed Admin. Claim Reserves:    $330.00**

**TOTAL DISPUTED ADMIN. CLAIMS:   $385,044.33**
**TOTAL DISPUTED ADMIN. CLAIM RESERVES:  $38,842.33**

## Exhibit "D"

Allowed Administrative Claims of Professionals

| | |
|---|---|
| Teitelbaum Law Group, LLC | |
| Unpaid Allowed Legal Fees & Expenses – 1st Interim Fee Application | $53,575.07 |
| Holdback – 1st Interim Fee Application | $16,849.20 |
| Estimated Allowed Legal Fees & Expenses – 2nd Interim Fee Application | $49,150.29 |
| Estimated Holdback – 2nd Interim Fee Application | $11,773.80 |
| Estimated Allowed Legal Fees and Expenses for 10/1/18 – Effective Date (after application of $5288.50 Retainer) | $85,000.00 |
| **Subtotal** | **$216,348.36** |
| Colusanti & Iurato | |
| Unpaid Allowed Accounting Fees & Expenses – 1st Interim Fee Application | 0.00 |
| Holdback – 1st Interim Fee Application | $2,589.40 |
| Estimated Allowed Accounting Fees & Expenses – 2nd Interim Fee Application | $8939.20 |
| Estimated Holdback – 2nd Interim Fee Application | $2,234.80 |
| Estimated Allowed Accounting Fees and Expenses for 10/1/18 – Effective Date | $25,000.00 |
| **Unapplied Retainer** | ($9642.40) |
| **Subtotal** | **$29,121.00** |
| **Grand Total of Estimated Professional Fees as of Confirmation Date** | **$245,469.36** |
| **Reserve for Post-Confirmation Professional Fees** | **$75,000.00** |
| **Combined Estimated Professional Fees & Post-Confirmation Fee Reserve** | **$320,469.36** |

**Exhibit "E"**

Allowed Priority Tax Claims

| **E& J Macon Realty LLC – Case No. 1:18-40321-nhl** | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| E&J 2 | IRS | Partnership Taxes | $2,000.00 | Liquidated | Undisputed | $0.00 | $2,000.00 |
| E&J 5 | NYC Dept. of Finance | UBT and/or GCT | $77,412.80 | Disallowed subject to Claimant's right to refile, per terms of Order at ECF Docket No. 111 | Disputed | $77,412.80 | TBD |
| **TOTAL ALLOWED PRIORITY TAX CLAIMS: $2,000.00** | | | | | | | |
| **TOTAL ALLOWED PRIORITY TAX CLAIMS RESERVES:    $77,412.80** | | | | | | | |

**Exhibit "F"**

Class 1: Secured Claims

**Note:** This Schedule assumes a 2/28/19 Confirmation Date for purposes of calculating Allowed Claim Amounts

| E& J Macon Realty LLC – Case No. 1:18-40321-nhl | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| E&J 1 | Macon Funding Associates | First Mortgage on Premises | $4,136,954.96 | Liquidated | Stipulation of Settlement | $0.00 | $3,843,533.00 (principal) |
| | | Estimated Unpaid Post-Petition Interest | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $280,425.06 (estimated) |
| | | Estimated Post-Petition Legal Fees of Mortgagee as of Effective Date | N/A | Unliquidated | Stipulation of Settlement | $0.00 | $25,000.00 (estimated) |
| E&J 4 | NYC Dept. of Finance | Pre-Petition Property Taxes | $15,819.59 | Liquidated | Disputed - duplicative with Pacific Claim 8 to extent of $19.06, remaining $14,640.74 represents taxes on 401 Macon St. sold as 2018 Tax Lien | $0 [$15,049.20 reserved for Macon Claim 4, which covers same taxes on 401 Macon Street] | $0.00 |

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| E&J 6 | Mark J. Nussbaum, as Nominee | 2nd Mortgage on Premises | $576,334.86 (Pre-Petition P&I) | Liquidated | Undisputed | $0.00 | $576,334.86 |
| | | Post-Petition Interest as of Effective Date | N/A | Liquidated | Undisputed | $0.00 | $67,666.91 |
| E&J 7 | NYC OATH | Pre-Petition ECB Violations on 401 Macon Street | $12,392.28 | Liquidated | Undisputed | $0.00 | [$12,392.28 – included in total for 401 Macon Realty LLC, not included in E&J Macon Realty LLC total] |
| N/A | Internal Revenue Service | Federal Tax Lien against Ervin Johnson recorded in Kings County for 2009-2012 Unpaid Income Tax | $238,549.40 | Liquidated | Disputed | $238,549.40 | TBD |
| | | | | | | **Subtotal Claims: $4,792,959.83** | |
| | | | | | | **Subtotal Reserves:    $238,549.40** | |

***Cont. Next Page***

| 401 MACON REALTY LLC – Case No. 18-40409-nhl | | | | | | | |
|---|---|---|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
| Macon 3 | NYC OATH | Pre-Petition ECB Violations on Macon Street | $360.00 | Liquidated | Undisputed | $0.00 | $360.00 |
| Macon 4 | New York City Dept. of Finance | Pre-Petition Real Estate Taxes | $15,049.20 | Liquidated | Disputed[1] | $15,049.20 | $0.00 |
| Macon 5 | New York City Water Board | Pre-Petition Water/Sewer Rents | $30,613.22 | Liquidated | Undisputed | $0.00 | $30,613.22 |
| E&J 7 | NYC OATH | Pre-Petition ECB Violations on 401 Macon Street | $12,392.28 | Liquidated | Undisputed | $0.00 | $12,392.28 |
| N/A | Tower Capital Management | 2018 Tax Lien on Macon Street | N/A | Liquidated | Undisputed | $0.00 | $13,465.00 |
| | | Interest through Confirmation Date | N/A | Liquidated | Undisputed | $0.00 | $1,254.96 |
| **Subtotal Secured Claims: $58,085.46** | | | | | | | |
| **Subtotal Secured Reserves:      $15,049.20** | | | | | | | |

---

[1] Taxes forming basis of claim were sold as 2018 Tax Lien to Tower Capital Management – See CFRN 2018000284202 , Pg. 40

**1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Pacific 5 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $635.42 | Liquidated | Undisputed | $0.00 | $635.40 |
| Pacific 6 | New York City Water Board | Pre-Petition Water/Sewer Rents | $8,196.34 | Liquidated | Undisputed | $0.00 | $8,196.34 |

**Subtotal Secured Claims: $8,831.74**
**Subtotal Secured Reserves:      $0.00**

**1049 BERGEN REALTY LLC – Case No. 18-40412-nhl**

| Claim Number | Claimant | Claim Basis | Proof of Claim Amount | Status | Disposition | Disputed Claim Reserve Amount | Allowed Claim Amount |
|---|---|---|---|---|---|---|---|
| Bergen 3 | NYC OATH | Pre-Petition ECB Violations on Pacific Street | $1816.25 | Liquidated | Undisputed | $0.00 | $1816.25 |
| Bergen 4 | New York City Water Board | Pre-Petition Water/Sewer Rents | $1401.24 | Liquidated | Undisputed | $0.00 | $1401.24 |

**Subtotal Secured Claims: $3217.49**
**Subtotal Secured Reserves: $0.00**

**TOTAL SECURED CLAIMS: $4,863,094.52**
**TOTAL SECURED RESERVES:   $253,598.60**

## **Exhibit "G"**

Class 2: Allowed Non-Tax Priority Claims

NONE

## Exhibit "H"

Class 3: Allowed General Unsecured Claims

| 1596 PACIFIC REALTY LLC – Case No. 18-40410-nhl | | | | |
|---|---|---|---|---|
| Claim Number | Claimant | Claim Basis | Face Amount of Claim | Allowed Claim Amount |
| Pacific 1 | Consolidated Edison Company of New York, Inc. | Pre-Petition Unpaid Electric Charges | $608.62 | $608.62 |
| **TOTAL ALLOWED GENERAL UNSECURED CLAIMS: $608.62** | | | | |
| **TOTAL ALLOWED GENERAL UNSECURED RESERVES:     $0.00** | | | | |

## Exhibit "I"

Exit Financing Commitment Letter



# L&L Capital Partners LLC

50 Bank Street
New York, New York 10014
(646) 867 - 1284

Dated:                          February 7th, 2019

Borrower's Name:  *Mark Nussbaum & Ervin Johnson*
                        (Principal)

Address: *c/o 225 Broadway – 39st Fl, NY, NY, 10007*

**Collateral:**   401 Macon, Brooklyn (first lien), 1049 Bergen, Brooklyn (first lien), 1596 Pacific, Brooklyn (first lien), 2836 W. 19th, Brooklyn (first lien), 2136 Fulton, Brooklyn (first lien). Owners of 2836 W 19th Street and 2136 Fulton shall be guarantors and will give a note and mortgage to secure the guaranty as to the collateral properties currently in Bankruptcy. In addition, Lender will receive a pledge of borrowers shares of the entity. (the " Collateral Property")

Borrower's Attorney: *Mark J. Nussbaum & Associates, PLLC*
     Address: *225 Broadway – 39st Fl, NY NY 10007*

     Tel/Fax *212 632 8300 / 212 344-8100*
     E-mail *nussbaum @ mjnpllc.com*

Dear Mr. Nussbaum:

   As used herein, the words "we", "our" refer to the Lender identified herein as L&L Capital Partners LLC, the words "you", "your" refer to the Borrower named herein.

This letter is to advise you that we are willing to make a loan to the Borrower for a term of twenty four months, in the amount of $ **7,500,000.00, with $ 6,900,000.00 funded at closing, $ 300,000.00 of which to be held as an interest reserve, $ 100,000.00 of which is to be held as an escrow (see clause 21), and an additional $ 600,000.00 to be held back by lender at lenders sole discretion and to be funded at a later date during the term of the loan, subject to lenders walk-through of the various premises and borrower providing new leases to lender at that time,** with borrower only paying interest on the funded portion of the loan ($ 6,900,000.00 at closing of Bankruptcy workout), and for the amounts loaned to be evidenced by a note and to be secured by a first mortgage on the Collateral Properties except 2136 Fulton Street which shall be a second mortgage on the Collateral Property.

The placing of your loan will be subject to the following terms and conditions:

1.      The term of the Loan shall be two (2) years (the "Term") and shall be payable in monthly installments of interest only at the rate of ten and three quarters (10.75%) percent per annum for the first year of the loan, and at the rate of eleven and one half (11.50%) percent per annum for the second year of the loan.

2.      At closing, you shall prepay interest for 'odd days' interest, a $ 1,500.00 application fee, a 2.00% origination fee, and pay interest on a monthly basis thereafter. Borrower will pay real estate taxes and all other applicable municipals charges at such time that they are due.

3.      This mortgage loan shall be pre-payable in full at any time, upon fifteen (15) days prior written notice. If should Borrower payoff the loan on or before August 15th, 2019, Borrower will be required to pay a prepayment premium of sixty [60] days of per diem interest, a $ 2,500.00 administration fee and Lenders reasonable legal fees. If Borrower pays off after August 15th, 2019, then Borrower will pay a prepayment premium of thirty [30] days of per diem interest, a$ 2,500.00 administration fee and Lenders reasonable legal fees. Lender agrees to either assign or satisfy the loan at borrowers option pursuant to the terms of this section.

4.      Title to the Property shall continuously be held by the existing entity controlled by the Borrower; the loan shall be personally guaranteed by **principals with a greater than 10% share of the entity and/or** Ervin Johnson & Mark Nussbaum (the "Guarantors") and all ownership interests shall be pledged as additional security.

5.    Lender shall have no obligation under this letter if the loan does not close by March 15th, 2019, for any reason other than Lenders willful default.

6.    This commitment is conditioned upon a review of your title to the real estate which will serve as security for this loan, and such title must be satisfactory to Lender's attorney in his sole discretion.

7.    Borrower must pay all charges for title searches, surveys, mortgage tax, recording fees, filing fees, title insurance premiums, departmental searches, tax searches, and other expenses incurred in connection with this loan, and you hereby agree to indemnify us for these expenses, except as to such expenses to be paid at closing out of the loan proceeds as hereinabove set forth.

8.    You must pay the legal fee of our attorney for preparation of loan documents and closing of loan.  Our attorney is Vincent Georgetti, Esq., of Braunstein Turkish LLP, 7600 Jericho Turnpike #Suite 402,  Phone: (516) 802-0700 (X312), E-mail Address(es):  vg@braunsteinturkish.com.  The legal fee shall be billed on an hourly basis for expedited service.  These fees shall be owed by Borrower and Guarantor regardless of whether the Loan closes.

9.    You must pay a commitment fee of $20,000.00 upon the signing of this letter.  This fee is non-refundable if this loan does not close for any reason other than our willful default.  If the commitment fee is not paid in cash, we shall have the right to terminate this agreement, if a check or other instrument given in payment of this commitment fee is dishonored. The commitment fee will be applied at closing to Lender's legal fees, and any actual out of pocket costs of Lender, any overage will be applied to Borrower.

10.    You must produce two (2) days prior to closing, a policy of Building Risk and Fire Insurance in an amount not less than the full replacement value of the Property and Collateral Property  **paid-up** for at least six months, naming Lender as mortgagee-insured and containing a clause that said policy will not be canceled except upon prior written notice of impending cancellation given to us.  The mortgage will provide that fire insurance must be maintained on the property during the term of the loan in an amount sufficient to prevent the application of co-insurance, which amount shall be determined by Lender.  This shall include any additional premiums for vacant structures and/or for Builder's Risk in the event you commence any construction at the Collateral Properties. The owner-insured on the fire insurance policy must be correctly designated **at least two (2) days prior to closing**. Borrower must provide Builder's Risk policies for any vacant properties.

11.    You shall execute the note and mortgage(s) and any other documents required by our attorney at closing.

12.    The loan shall be fully due and payable upon a sale or other transfer of the Property.

13.    All loan documentation shall be in the forms prepared by our attorney and shall be available for inspection by your attorney before the loan closing.

14.    In the event of a default under the note and a resulting acceleration of the indebtedness, interest on the unpaid balance of principal and on any advances shall continue to be calculated at the rate of twenty four (24%) percent per annum (giving credit for that portion thereof which has been prepaid) until the maturity date set forth in the note.  If the note is not fully paid on or before its maturity date, after default or otherwise, interest after said date shall accrue at the rate of twenty four (24%) percent per annum until actual payment of the note in full.

15.    The note shall provide among other things that upon default you must pay an attorney's fee if any incurred by us in enforcing the note or mortgage(s).

16.    The mortgage(s) shall contain certain environmental representations and a hold harmless provision as to hazardous wastes.

17.    This commitment shall be void if the real property is damaged by fire prior to loan closing, at our sole discretion.

18.    This commitment is also subject to all items set forth below, which must be delivered to, and be acceptable to, Lender, in Lender's sole discretion:

    (a)    Title report - all exceptions to title to be cleared;
    (b)    Insurance as set forth above.
    (c)    All lease agreements, management agreements, and DHCRs for the past three years for each apartment subject to rent stabilization.
    (d)    A mortgage statement from the 1st Mortgage on 2136 Fulton Street confirming the loan is up to date.
    (e)    All ECB, HPD, & DOB violations to either be paid or escrowed prior to or at closing. Undertaking to clear all existing violations in six months from loan closing, with an option to extend for an additional three months with showing of good cause or effort to remove the violations.

4

      (f)     All Partnership agreements relating to the owning LLC evidencing that Ervin Johnson no longer manages the property.

      (g)     Proof of removal from AEP program for all properties previously subject to AEP.

19.    You agree to hold us harmless and indemnify us against claims by any broker you dealt with regarding this transaction, other than Joe Alenick and Judah Trynaur whose commission shall be paid by us.

20.    <u>You must specify your desire to receive funds by Wire Transfer at least One (1) Business Day prior to closing.</u> Absent timely instructions for a Wire, you will receive funds at closing by attorney escrow check.

21.    Lender shall permit releases of the individual collateral properties in exchange for payoffs of the following principal payment reduction, in addition to all outstanding interest charges due and owing, reasonable legal fees, a $ 1,500.00 administration fee per partial release or assignment, and before August 15th, 2019 60 days of per diem interest on the principal being paid down, and on or after August 15th 2019, 30 days of per diem interest on the principal being paid:

**Release Schedule:**

401 Macon, Brooklyn  $ 3,500,000 (Principal Due)
1049 Bergen, Brooklyn $ 1,600,000 (Principal Due)
1596 Pacific, Brooklyn $ 1,600,000 (Principal Due)
2836 W. 19th, Brooklyn $ 400,000 (Principal Due)
2136 Fulton, Brooklyn $ 400,000 (Principal Due)
**Total:**               $ 7,500,000.00

22.    Lender to escrow $ 100,000.00 at loan closing. These funds are to be held by lender and to be released at such time that Title issues a Mortgage Tax Endorsement to the loan policy. At such time that Title issues the Mortgage Tax Endorsement, L&L will apply the $ 100,000.00 escrow to the interest reserve. If the City rejects the collateral mortgage and mortgage tax is demanded, lender will pay it up to the escrow amount. Any amount above the Mortgage Tax escrow will be due and payable by borrower. If the amount requested by the City is less than the Escrow then lender will the sums due out of the escrow and the balance will be applied to the interest reserve.

Lender materially relies on the above representations in granting this commitment. Lender relies on each and every statement contained in Borrower's application for this loan.

Very truly yours,
L&L Capital Partners LLC

By: _____
Adam Nagin, Manager

I HAVE READ AND AGREE TO THESE TERMS:

DATE OF ACCEPTANCE: _2—7—/9_

6